■ In the Matter of MATTHEW C., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DONNA C., Appellant. [641 NYS2d 753] —Spain, J. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered October 7, 1994, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Matthew C. (born in 1989) is the youngest of respondent's five children. Although the relevant court documents are not part of the record, it appears that on April 27, 1989, petitioner initiated emergency removal proceedings (*see,* Family Ct Act § 1021) and Family Court (Feeney, J.) ordered Matthew's temporary placement with petitioner; shortly thereafter, he was placed in foster care. On May 1, 1989, petitioner filed a petition alleging that respondent had neglected Matthew and her other four children; in January 1990 respondent made an admission of neglect on the record. By dispositional order dated February 28, 1990, Family Court (Traficanti, J.) placed Matthew with petitioner and placed respondent under the supervision of petitioner with certain directions and conditions.

In November 1990, petitioner filed a petition seeking to extend Matthew's placement in foster care and to extend the provisions of the dispositional order. Respondent opposed the

extension and moved to vacate the February 28, 1990 order of fact-finding and disposition. In response, Family Court (Peters, J.) set aside the initial finding of neglect, but Matthew's placement was continued pending petitioner's filing of an amended petition; petitioner then filed an amended petition and a new fact-finding hearing was held in June 1991. Again, respondent admitted to certain allegations which the court found, as a matter of law, constituted neglect of all five children. A five-day dispositional hearing was held and a decision rendered in June 1992 which continued Matthew's placement with petitioner and, again, imposed numerous directions and conditions upon respondent.

In April 1992, before Family Court's dispositional decision was rendered, petitioner filed a petition alleging that respondent had permanently neglected Matthew. Respondent answered and a fact-finding hearing commenced in December 1992.* Petitioner offered no witnesses; however, it offered 18 pieces of documentary evidence which were accepted into evidence in support of its assertions that it had engaged in diligent efforts to reunite respondent with Matthew and that respondent failed to plan for his return. Five witnesses were called on respondent's behalf. In June 1993, Family Court (Peters, J.) determined that respondent had permanently neglected Matthew. After the commencement of the dispositional hearing, the proceedings were reassigned to Judge Mizel because of the appointment of Justice Peters to the Third Department. A new dispositional hearing was held and was completed in April 1994.

In October 1994, in a rather extensive and detailed decision and order, Family Court (Mizel, J.) found that the best interest of Matthew would be served by terminating respondent's parental rights and committed the guardianship and custody of Matthew to petitioner, thereby freeing him for adoption, without conditions. Respondent filed a notice of appeal; however, she failed to request and/or obtain a stay of any subsequent proceedings. In January 1995, Matthew was adopted by the foster parents with whom he had continually lived since the month following his birth.

Initially, we agree with respondent that although Matthew has been adopted the appeal from a determination of permanent neglect is not moot. An adjudication of neglect has been recognized as a permanent and significant stigma which is capable of affecting a parent's status in potential future proceed-

---

* Subsequent to December 1992 the matter was continued before Justice Peters by order of transfer after her election to Supreme Court.

ings (*see, Matter of Eddie E.*, 219 AD2d 719; *Matter of Westchester County Dept. of Social Servs. [Adam B.] v Laura B.*, 216 AD2d 402, *appeal dismissed* 86 NY2d 884). Upon review of the merits, however, we affirm.

Respondent does not dispute that petitioner engaged in diligent efforts to reunite her with Matthew but contends that petitioner did not sufficiently establish that she failed to plan for his return. We conclude that the record belies this contention. A parent is obligated to cooperate with the agency in fulfilling his or her responsibilities to the child (*see, Matter of Star Leslie W.*, 63 NY2d 136, 144; *Matter of Jessica FF.*, 211 AD2d 948) and, at the very least, must take steps to address the problems which caused the child's removal from the home (*see, Matter of Nathaniel T.*, 67 NY2d 838, 840; *Matter of Chianti FF.*, 205 AD2d 849, 850). Failure to utilize medical, psychiatric, psychological and other rehabilitative and social services will be taken into account in determining whether a parent has met his or her statutory duty (*see, Matter of Jamie M.*, 63 NY2d 388, 393).

Here, the record reveals that respondent consistently refused to accept responsibility for the problem which led to Matthew's removal from her home, claiming all along that Matthew's condition was caused by medication which she had been given during delivery. Further, respondent failed to demonstrate, as directed by Family Court, that she had obtained a physician for the children in her care. Although respondent completed parenting classes, she failed to attend said classes with an attendance rate as required by the court's order. Moreover, between August 1989 and May 1991, psychological evaluations of respondent indicated that she was the product of a chaotic and stressful environment, that she was unable to respond to the emotional needs of those around her, that she was incapable of understanding or meeting the developmental needs of her young children and that she was also incapable of making any long-term progress in meeting her own emotional needs.

The record supports the conclusion that, while respondent took token steps toward improving the problems she faced, the final product of her efforts did not rise to the level of planning for Matthew's future. In order to adequately plan for the future of a child a parent must "assume a measure of initiative and responsibility" (*Matter of Jamie M., supra*, at 393). By failing to take full advantage of the services and resources available to her, respondent failed to meet her responsibilities (*see, Matter of Chianti FF., supra*, at 850; *Matter of Commissioner of Suffolk County Dept. of Social Servs. [James William T.] v Brenda*

*T.*, 166 AD2d 529, *lv denied* 77 NY2d 803). In our view, the evidence adduced at the fact-finding hearing established by clear and convincing evidence that respondent repeatedly failed to plan for Matthew's future.

The record further supports Family Court's determination that Matthew's best interest would be served by terminating respondent's parental rights and freeing him for adoption. Family Court properly defined its role as that of promoting the child's best interest (*see, Matter of Star Leslie W.*, 63 NY2d 136, *supra*). The record reveals that after the finding of permanent neglect respondent's cooperation with petitioner and other agencies further deteriorated and she continued to show little insight, if any, into her neglectful behavior toward all of her children. Among other things, she refused to provide proof of attendance of weekly mental health counseling as required by the court's order and refused to sign a consent to release such information to petitioner; she also vehemently refused to meet with the court-appointed special advocate. Regarding Matthew, testimony of his pediatrician indicated that he suffered from signs of depression, withdrawal, acting out behavior, loss of appetite and stomach pain, and that he required a higher degree of supervision and physical care than a normal child of the same age. Furthermore, the record amply supports the finding that, in the alternative, Matthew was afforded a consistently warm, affectionate and supportive environment in the hands of his foster parents. This evidence supports the court's conclusion that Matthew's best interest required permanent termination of respondent's parental rights (*see, supra*, at 148).

Respondent's contention that she was denied the effective assistance of ccunsel also lacks merit. A respondent in a permanent neglect proceeding has the right to the assistance of counsel (*see,* Family Ct Act §§ 261, 262 [a] [iv]; *Matter of Karl L.*, 224 AD2d 841; *Matter of De Vivo v Burrell*, 101 AD2d 607). "Such right would be meaningless unless the assistance of counsel is effective" (*Matter of De Vivo v Burrell, supra*, at 607). Because of the potentially drastic consequences of a child protective proceeding, it has been recognized that the right to counsel afforded under the Family Court Act "affords protections equivalent to the constitutional standard of effective assistance of counsel afforded defendants in criminal proceedings" (*Matter of Erin G.*, 139 AD2d 737, 739; *see, People v Baldi*, 54 NY2d 137, 147). To prevail on such a claim respondent must demonstrate that she was deprived of less than meaningful representation and that she suffered actual prejudice as the

result of the claimed deficiencies (*see, People v Frascatore*, 200 AD2d 860, 861). A mere disagreement with respect to trial strategies, tactics or scope of possible cross-examination will not suffice (*see, People v Flores*, 84 NY2d 184, 187). In our view, respondent has not demonstrated that she was afforded less than meaningful representation.

The record shows that respondent's counsel was afforded, and exercised, the opportunity to review and object to each piece of evidence which was admitted. Notably, respondent's counsel was already familiar with the documentary evidence because it was made up of the same documents introduced at the dispositional hearing on the neglect petition which was held the previous year; it is also significant that respondent does not now argue that any particular piece of evidence should not have been admitted (*see, Matter of Rita VV.*, 209 AD2d 866, 868, *lv denied* 85 NY2d 811). While counsel exhibited, in some instances, difficulty in articulating proper questions, and as a result was faced with numerous objections by petitioner and admonitions from Family Court, he did succeed in presenting a case on respondent's behalf, adequately questioning witnesses and presenting evidence. Moreover, respondent concedes that "there are undeniably many instances in this [r]ecord where counsel did vigorously advocate for his client". Absent evidence that respondent suffered actual prejudice as a result of counsel's representation (*see, Matter of Dingman v Purdy*, 221 AD2d 817, 818), the record, as a whole, supports the conclusion that respondent was meaningfully represented and that she was afforded a fair hearing.

We have reviewed respondent's remaining contentions and find them to be without merit.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.