In the Interest of K.L., I.L., M.L., and D.L.

No. 2–01–091–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 31, 2002.

Sondrea J. King, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, and Charles M. Mallin, Tanya S. Dohoney, and James Teel, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant H.L. appeals the termination of his parental rights to his four children, K.L., I.L., M.L., and D.L. In three issues, Appellant contends he had a right to effective assistance of counsel at the hearing resulting in the termination of his parental rights; his counsel was ineffective in not objecting to inadmissible hearsay evidence; and without the inadmissible hearsay, there is no evidence to support the trial court's findings of fact and conclusions of law. Because we find no reversible error, we will affirm the trial court's judgment.

## Background Facts

The Texas Department of Protective and Regulatory Services (TDPRS) sought termination of Appellant's parental rights to his four children, following an investigation into allegations that Appellant had sexually abused K.L., his oldest daughter. Appellant claimed he was financially unable to employ his own counsel and sought appointment of counsel to represent him in the termination proceedings. The trial court granted his request and appointed counsel to represent Appellant.

At the hearing on the TDPRS's petition to terminate Appellant's parental rights, five witnesses, including three Child Protective Services (CPS) caseworkers, testified about K.L.'s allegations of sexual abuse. At the conclusion of the proceedings, the trial court entered judgment terminating Appellant's parental rights to all four of his children. The trial court concluded that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their emotional or physical well-being, engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, and that termination was in the children's best interests.

## Right to Effective Assistance of Counsel

This appeal requires the determination of two fundamental issues: does Appellant have a right to effective assistance of counsel in a termination of parental rights case; and if so, was his trial counsel ineffective

by failing to object to inadmissible hearsay evidence? In contending he had a right to effective trial counsel, Appellant relies upon two recent decisions by the Waco Court of Appeals and the First District Court of Appeals in Houston, holding that the statutory right to counsel in termination cases embodies the right to effective assistance of counsel.[1] Appellant also acknowledges that five other courts of appeals have held that the constitutional right to effective assistance of counsel in criminal actions does not extend to a civil proceeding for termination of parental rights.[2]

This court recently confronted the issue of effective assistance of counsel in a parental rights termination case.[3] In *A.R.R.*, the appellant contended he was constitutionally entitled to effective assistance of counsel, despite contrary authority holding that the Sixth Amendment right to effective assistance of counsel afforded criminal defendants has not been extended to civil termination proceedings. We opted to follow those cases, holding that "the Sixth Amendment right to effective assistance of counsel has not yet been extended to civil actions despite being a right clearly recognized in criminal proceedings."[4]

Unlike *A.R.R.* and the cases we relied upon in that opinion, Appellant in this case does not premise his effective assistance of counsel claim upon the Sixth Amendment. Rather, Appellant's argument is based upon the Due Process Clause of the Fourteenth Amendment. Specifically, Appellant argues that this court should follow the Waco and Houston Courts of Appeals in holding that the statutory right to counsel *embodies* a due process right to effective assistance of counsel.

In *B.L.D.*, the court relied upon United States Supreme Court authority that "[s]tate intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause."[5] Citing procedural due process concerns and recognizing that it is appropriate in termination cases to "extend" and harmonize with criminal jurisprudence, the court held that the statutory right to counsel in a termination case includes a due process right that the representation be effective.[6]

While the Supreme Court of the United States has addressed an indigent parent's constitutional right to appointed counsel in a termination of parental rights case under the Fourteenth Amendment's Due Process Clause, the Court has never addressed the issue of effective assistance of counsel in

1. *In re B.L.D.*, 56 S.W.3d 203, 211 (Tex.App.-Waco 2001, no pet.); *In re J.M.S.*, 43 S.W.3d 60, 63 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

2. *See In re B.B.*, 971 S.W.2d 160, 172 (Tex.App.-Beaumont 1998, pet. denied); *Arteaga v. Tex. Dep't of Protective & Regulatory Servs.*, 924 S.W.2d 756, 762 (Tex.App.-Austin 1996, writ denied); *In re J.F.*, 888 S.W.2d 140, 143 (Tex.App.-Tyler 1994, no writ); *Posner v. Dallas County Child Welfare Unit*, 784 S.W.2d 585, 588 (Tex.App.-Eastland 1990, writ denied); *Howell v. Dallas County Child Welfare Unit*, 710 S.W.2d 729, 734–35 (Tex.App.-Dallas 1986, writ ref'd), *cert. denied*, 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987).

3. *See In re A.R.R.*, 61 S.W.3d 691, 695 (Tex.App.-Fort Worth 2001, pet. denied).

4. *Id.*

5. *B.L.D.*, 56 S.W.3d at 211 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)).

6. *B.L.D.*, 56 S.W.3d at 211–12; *see also In re J.M.S.*, 43 S.W.3d at 63 (agreeing with the Waco Court of Appeals in concluding that the mandatory appointment of counsel includes a corresponding right to hold appointed counsel accountable if they are ineffective).

the context of a termination case.[7] In *Lassiter*, the Supreme Court held there was no constitutional right to appointed counsel for indigent parents in every parental rights termination proceeding; rather, an indigent parent's constitutional right to counsel under the Fourteenth Amendment's Due Process Clause must be made on a case by case basis.[8] The court noted, however, that "wise public policy ... may require that higher standards be adopted than those minimally tolerable under the Constitution."[9] The court further recognized that the majority of states provide statutorily for the appointment of counsel in termination cases and stated that its opinion in no way implied that these states' actions were anything "other than enlightened and wise."[10]

Texas is one such state that has adopted higher standards and granted indigent parents the right to appointed counsel in termination proceedings.[11] The question presented in this case is whether, once granted the right to appointed counsel, the Due Process Clause of the Fourteenth Amendment requires that appointed counsel provide effective assistance of counsel. Stated differently: May Texas, consistent with the Due Process Clause of the Fourteenth Amendment, grant indigent parents a right to appointed counsel without also granting those parents a corresponding right that appointed counsel provide effective assistance of counsel?

Historically, the United States Supreme Court has, without dispute, recognized that state intervention to terminate the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause.[12] Most recently, in *M.L.B. v. S.L.J.*, the Court reiterated its long-held precedent that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment"[13] and concluded that termination proceedings are entitled to heightened protection under the Constitution.[14]

### Due Process Standard

In *Lassiter*, the Court declined to extend a constitutional *right to counsel* in every termination proceeding.[15] The Court has repeatedly recognized, however, that, although a constitutional right may not exist, once a state undertakes to grant individuals certain rights, those rights are entitled to constitutional protection.[16]

---

7. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27–32, 101 S.Ct. 2153, 2159–62, 68 L.Ed.2d 640 (1981).

8. *Id.*

9. *Id.* at 33–34, 101 S.Ct. at 2163.

10. *Id.* at 34, 101 S.Ct. at 2163.

11. TEX. FAM.CODE ANN. § 107.013 (Vernon 2002).

12. *See Santosky*, 455 U.S. at 753, 102 S.Ct. at 1394; *see also Lassiter*, 452 U.S. at 24–32, 101 S.Ct. at 2158–62; *Lassiter*, 452 U.S. at 37, 101 S.Ct. at 2165 (Blackmun, J. dissenting); *Lassiter*, 452 U.S. at 59–60, 101 S.Ct. at 2176 (Stevens, J. dissenting).

13. 519 U.S. 102, 119, 117 S.Ct. 555, 565, 136 L.Ed.2d 473 (1996).

14. *See id.* at 125, 117 S.Ct. at 568.

15. *Lassiter*, 452 U.S. at 27–32, 101 S.Ct. at 2159–62.

16. *M.L.B. v. S.L.J.*, 519 U.S. 102, 110–11, 117 S.Ct. 555, 561 (1996) (recognizing that although the federal constitution guarantees no right to appellate review, it is fundamental that once a state affords that right, it must be kept free of unreasoned distinctions that can only impede open and equal access to the courts); *Evitts v. Lucey*, 469 U.S. 387, 401, 105 S.Ct. 830, 839, 83 L.Ed.2d 821 (1985) (stating that when a state opts to act in a field where its action has significant discretionary

Thus, once a state chooses to act and grants rights to its citizens, such rights cannot be withdrawn without consideration of applicable due process norms.[17] Accordingly, because termination proceedings are included within the finite class of liberty interests protected by the Fourteenth Amendment and because the State of Texas has undertaken to grant indigent parents the right to appointed counsel in termination proceedings, we conclude that the State must administer that right consistent with the Due Process Clause of the Fourteenth Amendment.[18]

While we do not believe *Lassiter* is dispositive of the due process issue raised in this case, it is instructive with regard to the due process analysis applicable to termination cases. In *Lassiter*, the Court made the following observations:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its

importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.[19]

In *Lassiter*, both the majority and three dissenters agreed that the nature of the process due in parental rights termination proceedings turns on a balancing of the three factors specified in *Mathews v. Eldridge:* (1) the private interest at stake; (2) the governmental interest; and (3) the risk of error or injustice.[20] The respective *Lassiter* opinions disputed, however, whether those factors should be weighed against a presumption disfavoring appointed counsel for one not threatened with loss of physical liberty.[21] In *Santosky*, the Court engaged in a straight-forward consideration of the *Eldridge* factors in determining whether the preponderance of the evidence standard of proof in termination proceedings satisfied due process, stating that "[u]nlike the Court's right-to-counsel rulings, its decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular

---

elements, "it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause"); *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (concluding that although a state may choose whether it will institute any given welfare program, it must operate whatever programs it does establish subject to the protections of the Due Process Clause); *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (stating that while there is no constitutional right to appellate review, states that do grant appellate review must conduct proceedings in accordance with Due Process and Equal Protection Clauses).

17. *Evitts*, 469 U.S. at 400–01, 105 S.Ct. at 838.

18. *Id.; see also Santosky*, 455 U.S. at 753, 102 S.Ct. at 1394 (holding that state intervention to terminate the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause).

19. *Lassiter*, 452 U.S. at 24–25, 101 S.Ct. at 2158 (citations omitted).

20. *Id.* at 27–32, 101 S.Ct. at 2159–62; *id.* at 37–38, 101 S.Ct. at 2165 (Blackmun, J. dissenting); *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

21. *Compare Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2161–62, with *Lassiter*, 452 U.S. at 41, & n. 8, 101 S.Ct. at 2167, & n. 8 (Blackmun, J. dissenting).

standard."[22] Because the right to effective assistance of counsel issue involved in this case is based on the right to appointed counsel, we will employ the due process analysis applied in *Lassiter*. Thus, in deciding the due process issue raised in this case, we will first look to relevant precedents and then weigh those precedents against the three *Eldridge* factors.

### Relevant Precedent

The United States Supreme Court has unanimously recognized that "termination decrees work a unique kind of deprivation," involving the "awesome authority of the State to destroy permanently all legal recognition of the parental relationship," noting that "[f]ew consequences of judicial action are so grave as the severance of natural family ties."[23] The court has "repeatedly" set "parental status termination decrees apart from mine run civil actions."[24] Most recently, the Court rejected an invitation to place termination cases "with the generality of civil cases." The Court instead chose to disregard the "civil" label assigned to termination cases, placing them in the same category as certain criminal cases in determining whether due process requires a state to provide an indigent parent with access to an appeal.[25] In deciding to employ the standard applied in criminal cases, the Court analogized a parent losing parental rights to "a defendant resisting criminal conviction" because both seek "to be spared from the State's devastatingly adverse action."[26]

In the context of criminal cases, the U.S. Supreme Court has long held that the right to counsel cannot be satisfied by mere "formal appointment" and that the "right to counsel is the right to the effective assistance of counsel."[27] In considering a criminal defendant's constitutional right to counsel, the court has noted that the right to counsel "would be a futile gesture unless it comprehended the right to the effective assistance of counsel."[28] "A party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all."[29]

The root of the requirement that a criminal defendant must have the effective assistance of counsel was founded upon the Due Process Clause of the Fourteenth Amendment in *Powell v. Alabama.*[30] *Gideon v. Wainwright*, in extending the Sixth Amendment right to counsel in all felony proceedings to state court defendants

22. *Santosky*, 455 U.S. at 754, 102 S.Ct. at 1395.

23. *M.L.B.* at 119, 127–28, 117 S.Ct. at 565, 569–70.

24. *Id.* at 127, 117 S.Ct. at 569.

25. *Id.* at 119–20, 127–28, 117 S.Ct. at 565–66, 569–70.

26. *Id.* at 125, 117 S.Ct. at 568.

27. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (stating "[t]hat a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command.... An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair."); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *Evitts*, 469 U.S. at 395, 105 S.Ct. at 835 (citing *Avery*, 308 U.S. at 446, 60 S.Ct. at 322).

28. *Evitts*, 469 U.S. at 397, 105 S.Ct. at 837.

29. *Id.* at 396, 105 S.Ct. at 836.

30. *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932); *see* Robert S. Catz & Nancy Lee Firak, *The Right To Appointed Counsel in Quasi-Criminal Cases: Towards An Effective Assistance of Counsel Standard*, 19 Harv. C.R.–C.L. L.Rev. 397, 444–45 (1984).

through the Fourteenth Amendment's Due Process Clause, shifted the theoretical root of the right to assistance of counsel, which in turn shifted the focus of the effectiveness inquiry to one based upon the Sixth Amendment.[31]

Recent decisions, however, reveal that the Fourteenth Amendment's Due Process Clause may require both the right to counsel and the right to effective assistance of counsel.[32] *Douglas* and *Evitts* both involved a State-granted right of first appeal in criminal cases. Recognizing that there is no federal constitutional right to appellate review, the court in *Douglas* held that the Fourteenth Amendment guarantees a criminal defendant the right to counsel on a first appeal of right.[33] Relying on the principles of *Griffin v. Illinois,* the court concluded that a state which afforded a right of appeal must make that appeal more than a "meaningless ritual" by supplying an indigent criminal appellant with an attorney.[34]

In *Evitts,* the court extended the principles set forth in *Griffin* and *Douglas* to hold that the Due Process Clause of the Fourteenth Amendment also guarantees a criminal defendant the effective assistance of counsel on a first appeal of right.[35] The court noted, "[t]he right to appeal would be unique among state actions if it could

be withdrawn without consideration of applicable due process norms." [36] Recognizing that a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all, the court concluded that "[a] first appeal of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." [37]

■ The principles that emerge from United States Supreme Court precedents with regard to the right of effective assistance of counsel are: (1) once a state establishes certain rights, those rights may not be withdrawn without consideration of applicable due process norms; (2) due process requires "meaningful" process; and (3) meaningful process requires more than mere formal appointment of counsel: it also requires that counsel be effective.[38] It is against these principles that we weigh the *Eldridge* due process factors.[39]

### Eldridge Due Process Factors

■ *Eldridge* sets forth three elements to be evaluated in deciding what due process requires: (1) the private interest at stake; (2) the government's interest; and (3) the risk that the procedures will lead to erroneous decisions.[40]

---

31. *Gideon v. Wainwright,* 372 U.S. 335, 341–42, 83 S.Ct. 792, 794–95, 9 L.Ed.2d 799 (1963); *see* Robert S. Catz & Nancy Lee Firak, *The Right To Appointed Counsel in Quasi–Criminal Cases: Towards An Effective Assistance of Counsel Standard,* 19 Harv. C.R.–C.L. L.Rev. 397, 446 (1984).

32. *Evitts,* 469 U.S. at 392–93, 105 S.Ct. at 834; *Douglas v. Cal.,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811(1963).

33. *Douglas,* 372 U.S. at 355–58, 83 S.Ct. at 815–17.

34. *Id.* at 358, 83 S.Ct. at 817.

35. *Evitts,* 469 U.S. at 393–97, 105 S.Ct. at 834–37.

36. *Id.* at 400–01, 105 S.Ct. at 838.

37. *Id.* at 396, 105 S.Ct. at 836.

38. *See M.L.B.,* 519 U.S. at 110–11, 117 S.Ct. at 560–61; *Douglas,* 372 U.S. at 358, 83 S.Ct. at 817; *Evitts,* 469 U.S. at 396, 400–01, 105 S.Ct. at 836, 838.

39. *Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159–60.

40. *Id.* at 27, 101 S.Ct. at 2159 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903).

## Private Interest

In *Lassiter*, the court stated:

[t]his Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection."[41]

In termination proceedings, the State seeks not simply to infringe upon that interest but to end it. "If the State prevails it will have worked a unique kind of deprivation." [42] Few forms of State action are "so severe and so irreversible" as a decision to terminate parental rights.[43] For these reasons, the court has repeatedly concluded that a parent's interest in the accuracy and justice of the decision to terminate his or her parental status is a "commanding one." [44]

## The State's Interest

With regard to the State, the United States Supreme Court has identified two interests at stake in termination proceedings: a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings.[45] In *Lassiter*, the Court determined that, due to the State's interest in the child's welfare, the State shares the

parent's interest in an accurate and just decision.[46] In *Santosky*, the Court narrowed this determination in clarifying that the State shares the parent's interest in an accurate and just decision with regard to determining whether the parent is fit:

[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the fact finding, the interest of the child and his natural parents coincide to favor use of error-reducing procedures.[47]

Once the State establishes parental unfitness, however, its interest diverges from that of the parents at the dispositional stage in determining the child's best interests.[48]

However, unlike the State of New York's bifurcated termination proceeding addressed in *Santosky*, Texas has a consolidated termination proceeding. Under section 161.001 of the family code, the petitioner seeking to terminate parental rights must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.[49] Proof of one does not relieve the petitioner from establishing the other.[50] Thus, the fact-finding and dispositional phases referred to in *Santosky* are combined into one proceeding under Texas' termination statute. Within such a

41. *Id.* at 27, 101 S.Ct. at 2159–60.

42. *Id.* at 27, 101 S.Ct. at 2160.

43. *Santosky*, 455 U.S. at 759, 102 S.Ct. at 1398.

44. *Id.* at 759, 102 S.Ct. at 1397; *Lassiter*, 452 U.S. at 27, 31, 101 S.Ct. at 2160–61; *see also* *M.L.B.*, 519 U.S. at 118, 117 S.Ct. at 565.

45. *Santosky*, 455 U.S. at 766, 102 S.Ct. at 1401.

46. *Lassiter*, 452 U.S. at 27, 101 S.Ct. at 2160.

47. *Santosky*, 455 U.S. at 760–61, 102 S.Ct. at 1398.

48. *Id.* at 760–61, 102 S.Ct. at 1398.

49. Tex. Fam.Code Ann. § 161.001.

50. *See In re D.M.*, 58 S.W.3d 801, 807 (Tex. App.-Fort Worth 2001, no pet.).

proceeding, evidence is offered to either establish or defend each of the two elements required for termination, making it difficult, if not impossible, to make the delineation set forth in *Santosky.* Considering Texas' termination statute and considering both *Lassiter* and *Santosky,* we conclude that the State's interest in promoting the child's welfare must necessarily be aligned with the parent's interest in an accurate and just decision in making a determination under section 161.001.[51] The *parens patriae* interest "favors preservation, not severance, of natural familial bonds." [52]

We also note that Texas has adopted new deadlines for termination proceedings, in an effort to reduce any undue delay in such proceedings.[53] Thus, we recognize that the State of Texas also has an interest that termination proceedings are not unreasonably delayed, resulting in prolonged uncertainty for the child. However, while the child's interest should be given great weight in termination proceedings, it may not always follow that preventing a parent from asserting a timely claim of ineffective assistance of counsel furthers the interests of the child. If counsel's ineffective representation of the parent results in an inappropriate termination of the parent-child relationship, the child's interest in preserving the natural parent-child relationship is not furthered.

As for the State's pecuniary interest, such interest is minimal in the situation presented here where the State has already granted indigent parents a right to counsel. Further, any pecuniary interest the State may have is hardly significant enough to overcome private interests as important as those presented here.[54]

### Risk of Error

We next consider both the risk of erroneous deprivation of private interests resulting from not imposing an effective assistance of counsel standard and the likelihood that imposing such a standard would reduce that risk.[55]

■ While there is no constitutional right to counsel in *every* termination proceeding,[56] the Texas Legislature has conferred the right to appointed counsel upon indigent parents once the State has initiated formal judicial proceedings to terminate their parental rights. Implicit in this statutory right to appointed counsel is recognition of a parent's *right to counsel* in termination proceedings, for if a parent is unable to afford an attorney, the statute mandates that one shall be appointed to assist them.[57] Just as the Sixth Amendment recognizes an accused's right to counsel and that counsel is necessary to produce fair and just results, the statutory guarantee of counsel recognizes a parent's right to counsel and imports that counsel's skill and knowledge is necessary to accord parents in termination proceedings sufficient opportunity to meet the state's "awesome authority" to terminate their parental rights.[58] Thus, the State of Texas has

51. TEX. FAM.CODE ANN. § 161.001.

52. *Santosky,* 455 U.S. at 766–67, 102 S.Ct. at 1402.

53. TEX. FAM.CODE ANN. § 263.405.

54. *See Lassiter,* 452 U.S. at 28, 101 S.Ct. at 2160.

55. *See Santosky,* 455 U.S. at 761, 102 S.Ct. at 1399.

56. *Lassiter,* 452 U.S. at 27–32, 101 S.Ct. at 2159–62.

57. *See* TEX. FAM.CODE ANN. § 107.013.

58. *See Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984); *M.L.B.,* 519 U.S. at 128, 117 S.Ct. at 570. This statutory right may not be taken away without due process of law. *Cf. Sterry v. State,* 959 S.W.2d 249, 257 (Tex.

recognized the importance of counsel for parents in termination proceedings. Considering the State's *parens patriae* interest in promoting the welfare of the child, the statutorily granted right to counsel implies that counsel is necessary to an accurate and just result.

We recognize that, in the vast majority of cases, counsel will render effective assistance and therefore ensure that the termination decision is accurate and just. We further recognize that it is only in rare instances that counsel fails to provide effective assistance. However, it cannot be said that the ineffective assistance of counsel can never lead to an erroneous and unjust result. Although we realize that the risk of error may be slight, given the weight of the private interests at stake, the cost of even occasional error is sizable.[59]

■■ In the absence of a right to effective assistance of counsel, a parent whose parental rights are erroneously terminated due to counsel's deficiencies has no meaningful remedy to cure such error. In contrast to a criminal case where a defendant can be relieved from the consequences of his counsel's ineffective assistance, in a civil case the usual remedy for counsel's deficiencies is through a malpractice suit seeking monetary damages.[60] However, a civil malpractice case does not provide an apt remedy in the context of a termination case, where the effect of counsel's deficiencies may result in the irrevocable loss of the parent-child relationship.[61] Monetary damages are wholly inadequate in termination cases given the nature and severity of the interests involved.[62] Thus, a claim for ineffective assistance of counsel is the only meaningful redress for a parent whose parental rights have been terminated in a proceeding where appointed counsel failed to render effective assistance. Granting a right to effective assistance of counsel would alleviate the possible risk that parental rights might be terminated due to the ineffective assistance of appointed counsel.

## Conclusion: The Right to Appointed Counsel Includes A Due Process Right to Effective Assistance of Counsel

■■ To summarize our consideration of the *Eldridge* factors in parental rights termination proceedings: the private interest affected is commanding; the governmental interest in not employing an effective assistance of counsel standard is slight; and the risk of error from not employing such a standard is substantial. The weight of these factors, along with the principles set

App.-Dallas 1997, no pet.) (recognizing that a criminal defendant has no constitutional right to have jury assess punishment, but does, however, have a statutory right to have the jury assess punishment and that this valuable statutory right may not be taken away without due process of law).

59. *See Santosky*, 455 U.S. at 764, 102 S.Ct. at 1400.

60. *Compare Rylander v. State*, 75 S.W.3d 119, 125 (Tex.App.-San Antonio 2002, pet. granted) *with Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex.1989)).

61. *See Santosky*, 455 U.S. at 759, 102 S.Ct. at 1398 (noting that juvenile delinquency adjudications, civil commitment, deportation, and denaturalization, at least to a degree, are all reversible official actions, but that, once affirmed on appeal, a New York decision terminating parental rights is final and irrevocable, and stating that "few forms of state action are both so severe and so irreversible"); *In re A.K.V.*, 747 A.2d 570, 576–79 (D.C.Ct.App. 2000) (concluding that malpractice suit is not an apt remedy in termination cases and that monetary damages are wholly inadequate in such cases).

62. *In re A.K.V.*, 747 A.2d at 576–79.

forth by the Supreme Court precedents discussed above, leads us to the conclusion that a statutory right to appointed counsel without any meaningful procedure by which to address counsel's effectiveness does not comport with due process.

Indeed, Texas courts have recognized claims, including due process claims, stemming from violations or alleged violations of the statutory right to counsel.[63] We also note that the majority of jurisdictions addressing the issue hold there is a right to effective assistance of counsel in termination cases.[64] Several of these jurisdictions have specifically held that the statutory right to counsel embodies a right to effective assistance of counsel,[65] with many

**63.** *See In re T.R.R.*, 986 S.W.2d 31, 37 (Tex. App.-Corpus Christi 1998, no pet.) (holding that trial court's failure to appoint parent an attorney ad litem in termination proceeding was reversible error constituting official mistake for purposes of bill of review); *Odoms v. Batts*, 791 S.W.2d 677, 680 (Tex.App.-San Antonio 1990, no writ) (holding that trial court's failure to appoint parent an attorney ad litem in termination proceeding was reversible error); *Turner v. Lutz*, 654 S.W.2d 57, 59–60 (Tex.App.-Austin 1983, no writ) (holding that, regardless of harmless error standard applied, the conclusion is that the trial court's failure to comply with the mandatory requirements for appointment of counsel under former section 11.10(a) is reversible error; the issues involved in the termination of parental rights are of such a serious nature that the trial court's error cannot be treated in any other way); *see also In re M.J.M.L.*, 31 S.W.3d 347, 355–56 (Tex.App.-San Antonio 2000, pet. denied) (holding indigent mother's due process rights were not violated by trial court's failure to appoint attorney ad litem for her until six months after parental termination suit was filed against her where counsel was appointed, giving mother a year to prepare for trial, when Department of Protective and Regulatory Services made clear its intent to pursue dual-track of both termination and reunification).

**64.** *S.C.D. v. Etowah County Dep't of Human Res.*, 2002 WL 31270285, *1–2, —— So.2d —— (Ala.Civ.App. Oct. 11, 2002); *Lawson v. Reynolds*, 2002 WL 1486484, *6 (Alaska·July 10, 2002); *In re Appeal in Maricopa County Juvenile Action No. JS–4942*, 142 Ariz. 240, 689 P.2d 183, 185 (Ct.App.1984); *In re Kristin H.*, 46 Cal.App.4th 1635, 54 Cal.Rptr.2d 722, 736–41 (1996); *State v. Anonymous*, 179 Conn. 155, 425 A.2d 939, 942–43 (1979); *L.W. v. Dep't of Children and Families*, 812 So.2d 551, 554–56 (Fla.Dist.Ct.App.2002); *In re A.H.P.*, 232 Ga.App. 330, 500 S.E.2d 418, 421–22 (1998); *In re R.G.*, 165 Ill.App.3d 112,

116 Ill.Dec. 69, 518 N.E.2d 691, 700–01 (1988); *In re J.T., E.T., and R.T.*, 740 N.E.2d 1261, 1265 (Ind.Ct.App.2000); *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986); *In re T.M.C.*, 26 Kan.App.2d 297, 988 P.2d 241, 243–44 (1999); *In re Stephen*, 401 Mass. 144, 514 N.E.2d 1087, 1090–91 (1987); *Powell v. Simon*, 171 Mich.App. 443, 431 N.W.2d 71, 74 (1988); *In re G.L.H.*, 614 N.W.2d 718, 720 (Minn.2000), *cert. denied*, 531 U.S. 967, 121 S.Ct. 403, 148 L.Ed.2d 311 (2000); *In re J.C.*, 781 S.W.2d 226, 227–28 (Mo.Ct.App.1989); *New Jersey Div. of Youth and Fam. Svcs. v. V.K.*, 236 N.J.Super. 243, 565 A.2d 706, 712–13 (App.Div.1989), *cert. denied*, 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990); *In re James W.H.*, 115 N.M. 256, 849 P.2d 1079, 1080–81 (Ct.App.1993); *In re Matthew C.*, 227 A.D.2d 679, 682, 641 N.Y.S.2d 753 (N.Y.App. Div.1996); *In re Oghenekevebe*, 123 N.C.App. 434, 473 S.E.2d 393, 396 (N.C.Ct.App.1996); *In re Heston*, 129 Ohio App.3d 825, 719 N.E.2d 93, 95 (1998); *In re D.D.F.*, 801 P.2d 703, 705–07 (Okla.1990), *cert denied*, 500 U.S. 922, 111 S.Ct. 2027, 114 L.Ed.2d 113 (1991); *State ex rel. State Office for Services to Children and Families v. Hammons*, 169 Or.App. 589, 10 P.3d 310, 312–13 (2000); *In re Adoption of T.M.F.*, 392 Pa.Super. 598, 573 A.2d 1035, 1039–40 (1990); *State ex rel. C.C.*, 48 P.3d 244, 247–49 (Utah Ct.App.2002); *In re Moseley*, 34 Wash.App. 179, 660 P.2d 315, 318 (1983); *In re M.D.(S.)*, 168 Wis.2d 995, 485 N.W.2d 52, 53–55 (1992).

**65.** *Anonymous*, 425 A.2d at 942–43; *A.H.P.*, 500 S.E.2d at 421–22; *R.G.*, 116 Ill.Dec. 69, 518 N.E.2d at 700–01; *J.T.*, 740 N.E.2d at 1265; *D.W.*, 385 N.W.2d at 579; *Stephen*, 514 N.E.2d at 1090–91; *Powell*, 431 N.W.2d at 74; *J.C.*, 781 S.W.2d at 227–28; *V.K.*, 565 A.2d at 712–13; *James W.H.*, 849 P.2d at 1080–81; *Matthew C.*, 227 A.D.2d at 682, 641 N.Y.S.2d 753; *Oghenekevebe*, 473 S.E.2d at 396; *Heston*, 719 N.E.2d at 95; *Hammons*, 10 P.3d at 312–13; *C.C.*, 48 P.3d at 247–48; *M.D.(S.)*, 485 N.W.2d at 53–55.

stating that to hold otherwise would render the appointment of counsel "meaningless," "illusory," "a nullity," "worthless," "of little value," or an "empty formality." [66]

Due process requires "meaningful" process.[67] As such, due process requires more than mere formal appointment. The State of Texas, in affording a right to appointed counsel, must make that right more than a "meaningless ritual." [68] Once granted the right to counsel, a remedy must also exist to cure any violations of this statutory right, for having vested the substantive right to appointed counsel upon indigent parents, that right cannot be taken away without due process of law.[69] It would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, as evidenced by the statutory right to appointed counsel, and, on the other hand, not require that counsel perform effectively.[70] If no remedy were provided a parent for ineffective representation, the statutory right to counsel would become a meaningless formality. If an attorney is not effective in providing a meaningful hearing, due process guaranties have not been met.[71] A meaningful right to appointed counsel,

therefore, must encompass the right to effective assistance of counsel. This conclusion both effectuates the Legislature's mandate and protects an indigent parent's statutory right to counsel.[72]

We conclude that Appellant, having been granted the right to appointed counsel, has the right to effective assistance of counsel. Like the right to counsel afforded criminal defendants, the statutory right to counsel afforded to indigent parents in termination proceedings would be a futile gesture unless it also includes the right to the effective assistance of counsel. Accordingly, we hold that the statutory right to appointed counsel afforded to indigent parents in termination proceedings embodies a due process right that counsel render effective assistance. We sustain Appellant's first issue.

### Ineffective Assistance of Counsel

Having concluded Appellant had a right to effective assistance of counsel, we turn to his second and third issues and his claims that he received ineffective assistance. Before addressing Appellant's con-

**66.** *Stephen,* 514 N.E.2d at 1090–91; *J.C.,* 781 S.W.2d at 227–28; *Matthew C.,* 227 A.D.2d at 682, 641 N.Y.S.2d 753; *Oghenekevebe,* 473 S.E.2d at 396; *Hammons,* 10 P.3d at 312; *C.C.,* 48 P.3d at 248; *M.D.(S).,* 485 N.W.2d at 54.

**67.** *Douglas,* 372 U.S. at 358, 83 S.Ct. at 817.

**68.** *Id.*

**69.** *M.L.B.,* 519 U.S. at 110–11, 117 S.Ct. at 560–61; *Evitts,* 469 U.S. at 400–01, 105 S.Ct. at 838 (noting that State-granted right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms); *see also Sterry,* 959 S.W.2d at 257 (concluding that criminal defendant has no constitutional right to have jury assess punishment, but does have

statutory right to have jury assess punishment, and this valuable statutory right may not be taken away without due process of law); *Moore v. Barr,* 718 S.W.2d 925, 926 (Tex.App.-Houston [14th Dist.] 1986, no writ) (recognizing that elected political candidate enjoyed vested property right which could not be taken away without due process of law).

**70.** *R.G.,* 116 Ill.Dec. 69, 518 N.E.2d at 700.

**71.** *Id.*

**72.** *See In re D.A.S.,* 973 S.W.2d 296, 298 (Tex.1998) (orig. proceeding) (stating that, although there has been no determination on whether a juvenile has a constitutional right to counsel on appeal, the Legislature's mandate that juveniles receive the assistance of counsel on appeal warrants the extension of the *Anders* procedure to juvenile appeals).

tentions, we first determine the applicable standard for reviewing Appellant's claims.

### Standard of Review

Given the United States Supreme Court's analogy of termination proceedings and criminal proceedings, we believe the correct standard for reviewing counsel's effectiveness is that applied in criminal cases under *Strickland*.[73] Under this standard, we apply a two-pronged test to ineffective assistance of counsel claims.[74] First, Appellant must show that his counsel's performance was deficient; second, Appellant must show the deficient performance prejudiced the defense.[75]

■■■■■ In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[76] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[77] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[78] An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[79] Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.[80]

■■■■■ The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.[81] In other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[82] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[83] The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.[84]

### Admissible Hearsay Under Section 104.006

Appellant contends his trial counsel was wholly ineffective in failing to object to inadmissible hearsay testimony from five witnesses who testified about K.L.'s statements of sexual abuse by Appellant. Because their testimony was the only evidence on which his parental rights were terminated, Appellant contends there is no evidence to support the trial court's judgment of termination; therefore, but for his counsel's unprofessional errors, the result of the hearing would have been different.

■■■■■ Three of the complained of witnesses were CPS caseworkers. Alana

**73.** 466 U.S. at 687, 104 S.Ct. at 2064.

**74.** *Id.; Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999).

**75.** *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

**76.** *Thompson,* 9 S.W.3d at 813.

**77.** *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065.

**78.** *Id.* at 690, 104 S.Ct. at 2066.

**79.** *Thompson,* 9 S.W.3d at 814.

**80.** *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

**81.** *Id.* at 687, 104 S.Ct. at 2064.

**82.** *Id.* at 694, 104 S.Ct. at 2068.

**83.** *Id.*

**84.** *Id.* at 697, 104 S.Ct. at 2070.

Rossi was the initial caseworker. Rossi testified about statements K.L. made to her in a March 2000 interview regarding two specific instances of sexual abuse by Appellant. Another CPS caseworker, Tammy Long, also interviewed K.L. in March 2000. Long also testified about the statements K.L. made to her regarding the same two separate instances of sexual abuse by Appellant. Vince Kanak, the CPS caseworker after Rossi, testified on cross-examination that CPS had made a "reason to believe" determination that Appellant had sexually abused K.L.

The remaining two witness were K.L.'s therapist, Gail Martin, and a defense witness, Cecil Addison, who was a volunteer for the Tarrant County Child Advocates. Both of these witnesses testified generally about K.L.'s allegations of sexual abuse by Appellant.

Appellant complains that the testimony of the these five witnesses was inadmissible hearsay because it did not meet the requirements of family code section 104.006, which provides for the admission of hearsay statements of child victims.[85]

In 1997, the Legislature amended the family code to permit the admission of hearsay statements by child victims in termination-of-parental-rights proceedings. Section 104.006 provides that under certain circumstances, a statement made by a child 12 years of age or younger that describes alleged sexual abuse against the child is admissible.[86] The statute allows admission of such a statement, providing: (1) the court finds the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability, and (2) the child testifies or is available to testify at the proceeding in

court or in any other manner provided for by law, or the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.[87]

Appellant first contends that it is unclear whether the statute permits the admission of a statement by a child who is older than 12 years at the time of trial. Appellant argues that the statute does not apply where, as in this case, the child is past the age of 12 at the time of trial and capable of testifying about the alleged abuse.

The TDPRS contends that Appellant's argument misconstrues the plain language of section 104.006. We agree. The statute applies to "statement[s] made by a child 12 years of age or younger."[88] The statute conditions the age of the child on when the statements were made, not on when the trial court later determines the admissibility of the child's statements at trial. K.L. was born on November 1, 1987. The statements K.L. made to Rossi and Long in March 2000 were made when she was 12 years old. Accordingly, these statements fall within section 104.006.

With regard to the statements testified to by Kanak, Martin, and Addison, the record shows that the statements about which Martin testified were made when K.L. was 13 years old. The record is unclear when the statements testified to by Addison and Kanak were made. However, as explained below, we need not consider the admissibility of these statements under section 104.006.

■ Appellant next argues that the testimony regarding K.L.'s statements of sexual abuse were inadmissible hearsay

85. TEX. FAM.CODE ANN. § 104.006.

86. *Id.*

87. *Id.*

88. *Id.*

because the procedural requisites of section 104.006 were not complied with. Appellant contends that section 104.006 required the trial court to hold a hearing, *before* the statements were admitted, to determine the reliability of K.L.'s statements and, if the child does not testify, that the witness' statement in lieu of the child's testimony is necessary to protect the child's welfare. Appellant admits that the TDPRS "attempted" to establish admissibility under section 104.006, but argues that this attempt was "belated" because it occurred after the TDPRS offered the witnesses' testimony and that the trial court failed to make the required findings under section 104.006.

Initially, we note that Appellant misstates the statute's procedural prerequisites to admissibility. Section 104.006 does not require the trial court to make a finding that the witness' statement in lieu of the child's testimony is necessary to protect the child's welfare if the child does *not* testify. Rather, the statute allows admission of the statement if the trial court makes a finding that the statement is reliable *and:*

> (1) the child testifies or is *available to testify* at the proceeding in court or in any other manner provided for by law; *or*
>
> (2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.[89]

Thus, only if a child is *unavailable* to testify is the trial court required to make a finding that admission of the witness' statement in lieu of the child's testimony is necessary to protect the child's welfare.

Section 104.006 is the civil analog of article 38.072 of the code of criminal procedure, in that both govern the admissibility of hearsay statements by child abuse victims.[90] Like section 104.006, article 38.072 requires the trial court to conduct a hearing to determine the reliability of the child's statement. As Appellant correctly points out, the court of criminal appeals has held that the requirements of article 38.072 are mandatory.[91] Like article 38.072, we believe the requirements of section 104.006 are also mandatory. However, we reject Appellant's arguments that the TDPRS' "belated attempt" and the trial court's failure to hold a hearing *before* the witnesses' statements were introduced renders them inadmissible or that the trial court failed to make the required findings under section 104.006.

The record shows that this case was tried before the trial court and that the issue regarding the admissibility of the witnesses' statements under section 104.006 was both presented to and considered by the court. Near the end of the proceedings, the TDPRS requested the trial court to proceed "only on the admissible hearsay statements that have been introduced," under the provisions of section 104.006. Following arguments of counsel, and based on the evidence presented, the trial court found that it was not in K.L.'s best interest that she be made to testify. The trial court also informed the parties that the court would allow her to testify, albeit in a restrictive environment, and no party indicated she was not available to testify. However, no party requested her testimony. Because the trial court could have concluded K.L. was *available* to testify, the trial court was not required to make a finding that the witnesses' testimo-

---

89. *Id.*

90. Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Supp.2002).

91. *Long v. State,* 800 S.W.2d 545, 547 (Tex. Crim.App.1990).

ny in lieu of K.L.'s testimony was necessary to protect K.L.'s welfare.[92] Rather, the trial court was required to determine only the reliability of K.L.'s statements.

Appellant appears to argue that the trial court failed to make a reliability determination under section 104.006 because the trial court failed to make a specific, express finding as to the reliability of K.L.'s statements. However, in admitting the testimony regarding K.L.'s statements, the trial court implicitly found K.L.'s statements in this case reliable.[93] The record evidence supports the trial court's implied finding of reliability.

 Additionally, nothing in section 104.006 indicates that, in a bench trial, the trial court must consider the admissibility of hearsay statements at any specific time during the proceedings. In a bench trial, an experienced judge exercises the functions of a jury and is charged with the responsibility of assessing the credibility of the witnesses, logically evaluating the evidence, rationally resolving factual disputes on the basis of such evidence, and correctly applying the law to the facts.[94] Although the trial court heard the evidence regarding K.L.'s statements before it considered the admissibility of those statements, the trial court could have ultimately decided to exclude the testimony as improper hearsay and ordered it withdrawn, if it found that the requirements of section 104.006 were not met.[95]

After considering the evidence before the trial court, and the statutory requisites of section 104.006, we cannot say the trial court abused its discretion in admitting either Rossi's or Long's testimony regarding K.L.'s statements of sexual abuse. Counsel is not ineffective for failing to object to admissible evidence.[96]

In light of our holding that Rossi's and Long's testimony was properly admitted and that counsel was not ineffective for failing to object to such testimony, we need not consider Appellant's additional arguments with regard to the admissibility of their testimony. Likewise, we need not consider the admissibility of the other three witnesses' testimony. Even were we to conclude counsel was ineffective in failing to object to their testimony, it would not have resulted in any prejudice to Appellant in that Rossi's and Long's testimony provides legally sufficient evidence to support the trial court's judgment terminating Appellant's parental rights.[97] Accordingly, we overrule Appellant's second and third issues.

## Conclusion

Having concluded that Appellant is entitled to the effective assistance of counsel,

---

92. *See id.*

93. *See Norris v. Norris,* 56 S.W.3d 333, 346 n. 7 (Tex.App.-El Paso 2001, no pet.) (stating that when trial court gives express findings on at least one element of a claim, but omits other elements, implied findings on the omitted unrequested elements are deemed to have been made in support of the trial court's ruling).

94. *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 251 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

95. *See Wright v. Wright,* 65 S.W.3d 715, 718 (Tex.App.-Eastland 2001, no pet.) (concluding that in bench trial where trial court explicitly stated that it based its ruling on the law and the evidence in the case and that it did not consider any religious matters in making its decision, trial court did not abuse its discretion in commenting on religious matters).

96. *Johnson v. State,* 977 S.W.2d 725, 729 (Tex.App.-Fort Worth 1998, pet. ref'd); *Johnson v. State,* 987 S.W.2d 79, 86 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

97. *See* Tex.R.App. P. 47.1.

but that his counsel was not ineffective, we affirm the trial court's judgment.

CAYCE, C.J. concurs without opinion.