Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






IN THE INTEREST OF A.H.L., III,

A CHILD.







§
 
§
 
§
 
§
 
§

§


No. 08-05-00307-CV

Appeal from
394th District Court

of Brewster County, Texas

(TC # 2004-06-B8158-CV)




 

 

 




O P I N I O N
 
            Alvaro Luna Hernandez, Jr., pro se, appeals from a judgment terminating his parental rights
to A.H.L. For the reasons that follow, we affirm.
FACTUAL SUMMARY
            Hernandez and Maria Imelda Rodriguez are the parents of ten-year-old A.H.L., who was born
on July 31, 1996. On June 9, 1997, a jury found Hernandez guilty of aggravated assault of a public
servant


 committed on July 18, 1996, less than two weeks before A.H.L.’s birth. The jury also found
that Hernandez had previously been convicted of capital murder on January 20, 1976 and of jail
escape on March 2, 1970, and it assessed Hernandez’s punishment at imprisonment for a term of
fifty years. Hernandez is presently serving that sentence in the Texas Department of Criminal
Justice, Institutional Division, and he is not eligible for parole until 2021. 
            Hernandez and Rodriguez divorced in 1998 and Rodriguez was appointed sole managing
conservator. Rodriguez had problems with substance abuse and did not provide adequate
supervision of the child. Consequently, he was often found “out and about in the community” by
himself, and between the ages of five and eight, he began engaging in inappropriate conduct such
as shoplifting, vandalism, and assault. On one occasion, he threatened another child with a
pocketknife. Due to his young age, A.H.L. could not be handled as a juvenile. A juvenile probation
officer would often wait with him at the police station until either his mother or grandmother could
be located. Finally, the Department of Family and Protective Services removed the boy from his
mother’s home due to inadequate supervision. 
            On June 29, 2004, the Department filed a petition to terminate the parental rights of both
Hernandez and Rodriguez. Hernandez, acting pro se, filed an answer, affirmative defenses, and a
counter-claim seeking monetary damages against Governor Rick Perry, and the executive director
and board members of the Department. On February 15, 2005, Hernandez requested the appointment
of an attorney ad litem to represent him “in his vigorous opposition to the termination of his parent-child relationship.” Two days later, he sought a bench warrant so that he could present testimony
and “prosecute his case pro se, in relation to all the procedural pleadings he has filed in this
proceeding.” The Department also asked to have Hernandez bench-warranted for the jury trial. The
trial court appointed Bonnie Bratton as attorney ad litem. It then granted Hernandez’s motion for
a bench warrant and ordered that he be brought to Brewster County for trial which was at that time
set for June 14, 2005. The court later revoked the warrant and issued one for an August 29 trial date. 
            Shortly before trial, the court revoked the second warrant based on its findings that
Hernandez represented a high security risk, and that the cost and inconvenience of transporting
Hernandez, and providing for increased security in the courtroom and in the jail, outweighed the
jury’s need to observe Hernandez’s demeanor. 
            In the meantime, Ms. Bratton requested that she be allowed to withdraw from representation,
or alternatively, that the scope of her representation be limited strictly to the termination proceeding. 
Bratton asked that Hernandez be allowed to represent himself in connection with his counter-claims
and certain affirmative defenses upon which Hernandez insisted but which she believed should not
be asserted. A short time later, Hernandez filed a motion in which he waived his right to counsel
and asked that Bratton be dismissed so he could exercise his right of self-representation. The trial
court heard these issues on April 20, 2005. Hernandez participated in the hearing via telephone. The
court denied Bratton’s motion to withdraw but clarified the appointment by ordering that counsel
did not have a duty to represent Hernandez: (1) in any claims for monetary damages, (2) in any
claims or affirmative defenses involving an assertion that the Department had lost and forfeited legal
authority and jurisdiction to act as a state agency or to pursue its statutory duties; (3) in any claims
or affirmative defenses attempting to relitigate the facts or legal issues of Hernandez’s legal
convictions for the purpose of showing that Hernandez had not engaged in any criminal conduct; (4) 
in any claims under the Americans With Disabilities Act on behalf of A.H.L. or Rodriguez or other
children in Texas; (5) in any affirmative defenses under the Americans With Disabilities Act based
upon the classification of A.H.L. or Rodriguez or other children in Texas; and (6) any constitutional
claims on behalf of A.H.L. and Rodriguez. At a subsequent hearing, the judge orally denied
Hernandez’s motion to represent himself but indicated that he would reconsider the issue before trial. 
He advised Hernandez to notify him if counsel failed to take any actions that Hernandez believed
she should.
            Prior to trial, Rodriguez voluntarily relinquished her parental rights and the trial court entered
judgment. A jury found that termination of Hernandez’s parental rights was in the child’s best
interests and that Hernandez had knowingly engaged in criminal conduct that had resulted in
conviction of an offense and confinement or imprisonment and inability to care for his son for not
less than two years from the date the petition was filed. The trial court entered judgment terminating
Hernandez’s parental rights. Hernandez timely filed a pro se notice of appeal, and a combined
motion for new trial and statement of the points he intended to raise on appeal.
SELF-REPRESENTATION AND BENCH WARRANT
            Hernandez’s first two issues concern the trial court’s refusal to allow him to represent himself
or to participate in the trial except through affidavit or deposition. We will first address the denial
of the bench warrant because it impacts the self-representation claim raised in Issue One.
Denial of Motion for Bench Warrant
            In Issue Two, Hernandez complains that the trial court abused its discretion by denying his
request for a bench warrant because the court’s security concerns were not particularized and were
exaggerated. Litigants cannot be denied access to the courts simply because they are inmates. In re
Z.L.T., 124 S.W.3d 163, 165 (Tex. 2003). However, an inmate does not have an absolute right to
appear in person in every court proceeding. Id. The inmate’s right of access to the courts must be
weighed against the protection of our correctional system’s integrity. Id. Trial courts are required
to consider several factors when deciding whether to grant an inmate’s request for a bench warrant,
including: (1) the cost and inconvenience of transporting the prisoner to the courtroom; (2) the
security risk the prisoner presents to the court and public; (3) whether the prisoner’s claims are
substantial; (4) whether the matter’s resolution can reasonably be delayed until the prisoner’s release;
(5) whether the prisoner can and will offer admissible, noncumulative testimony that cannot be
effectively presented by deposition, telephone, or some other means; (6) whether the prisoner’s
presence is important in judging his demeanor and credibility; (7) whether the trial is to the court or
a jury; and (8) the prisoner’s probability of success on the merits. Id. at 165-66.
            The litigant requesting the bench warrant bears the burden of establishing his right to relief
and he must provide factual information demonstrating why his need to appear outweighs the impact
on the correctional system. Id. at 166. The trial court does not have a duty to independently inquire
into the necessity of an inmate’s appearance beyond the contents of the bench warrant request. Id.
We review a trial court’s ruling on a bench warrant request for an abuse of discretion. Id. at 165.
            Sheriff Ronnie Dodson testified during a pretrial hearing that he was familiar with
Hernandez’s criminal history, including the aggravated assault committed against then-sheriff Jack
McDaniels when Hernandez disarmed McDaniels and went on the run with the sheriff’s gun. Sheriff
Dodson expressed his opinion that extra precautions would be warranted if Hernandez were brought
to Brewster County to participate in the trial. The trial judge discussed on the record his reasons for
revoking the bench warrant. The judge noted that counsel for Hernandez had requested that
Hernandez be shackled while in the courtroom because she feared for her own safety. Additionally,
the judge had spoken with the sheriff about his security plans for Hernandez’s trial and had learned
that the sheriff planned to have ten deputies devoted exclusively to the security of the courthouse,
the prisoner, and the jail while Hernandez was present. The court also was aware of Hernandez’s
criminal history, including his conviction of capital murder and the aggravated assault conviction
for which he is presently incarcerated. Based on the costs and the security implications for the
county, the court determined that the bench warrant should be revoked. Hernandez would participate
in the trial through counsel and he would be allowed to testify by deposition. But Hernandez refused
to participate in the deposition and insisted that he should be physically present at trial and allowed
to proceed pro se.
            Given Hernandez’s criminal history, the court’s security concerns are supported by the
record. Additionally, the sheriff’s security plan would necessitate additional costs and inconvenience
for the county because ten deputies would be required to devote their time exclusively to providing
security. The case cannot be delayed until Hernandez’s release because he will not be eligible for
parole until 2021. Nothing in the record suggests that Hernandez could not have offered admissible
noncumulative testimony via deposition, telephone, or some other means. Finding no abuse of
discretion in the denial of the bench warrant, we overrule Issue Two.
Self-Representation
            In Issue One, Hernandez contends that the trial court violated his right of self-representation
by appointing counsel to represent him over his objections. There is no constitutional right to
appointed counsel in every termination proceeding. Lassiter v. Department of Social Services, 452
U.S. 18, 27-32, 101 S.Ct. 2153, 2159-62, 68 L.Ed.2d 650 (1981). Rather, an indigent parent’s
constitutional right to counsel under the Fourteenth Amendment’s Due Process Clause must be made
on a case-by-case basis. Id. Texas has adopted a higher standard by mandating the appointment of
an attorney ad litem for an indigent parent who opposes the termination of the parent-child
relationship in a suit filed by a governmental entity. Tex.Fam.Code Ann. § 107.013(a)(1)(Vernon
Supp. 2006)(“In a suit filed by a governmental entity in which termination of the parent-child
relationship is requested, the court shall appoint an attorney ad litem to represent the interests of an
indigent parent of the child who responds in opposition to the termination”); see In re K.L., 91
S.W.3d 1, 4-5 (Tex.App.--Ft. Worth 2002, no pet.). Having undertaken to grant the right to counsel,
the State must administer that right consistent with the Due Process Clause. In re K.L., 91 S.W.3d
at 6. Thus, the right to counsel provided by Section 107.013 has been construed as including the
right to effective assistance of counsel. See In re K.L., 91 S.W.3d at 13.
            Section 107.013 does not expressly provide for an indigent parent’s right of self-representation and the trial court construed the mandatory language of the statute as prohibiting
Hernandez from proceeding without the benefit of appointed counsel. In arguing that he has a right
to self-representation, Hernandez relies on the Sixth Amendment of the United States Constitution,
the Supreme Court’s decision in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562
(1975), and Article I, Section 10 of the Texas Constitution.  
            Article I, Section 10, provides an accused in a criminal prosecution with certain rights
including the “right of being heard by himself or counsel, or both.” While Article I, Section 10
guarantees criminal defendants the right of self-representation, this right is not extended to civil
litigants.
            In Faretta v. California, the Supreme Court held that a criminal defendant not only has the
right to counsel under the Sixth Amendment, but also “has a constitutional right to proceed without
counsel when he voluntarily and intelligently elects to do so.” Faretta, 422 U.S. at 807, 95 S.Ct. at
2527. Faretta’s conclusion is based on three inter-related arguments: the history of the right of self-representation protected by federal and state law since the beginning of our nation (Faretta, 422 U.S.
at 812-17, 95 S.Ct. at 2530-32); the structure of the Sixth Amendment which guarantees an accused
the right to personally make his own defense (Faretta, 422 U.S. at 818-32, 95 S.Ct. 2532-40); and
respect for the individual (Faretta, 422 U.S. at 834; 95 S.Ct. at 2541). See Martinez v. Court of
Appeal of California, 528 U.S. 152, 154, 120 S.Ct. 684, 687, 145 L.Ed.2d 597 (2000)(applying
reasoning of Faretta and finding no right to self-representation on appeal of criminal conviction).
            As the Supreme Court noted in Martinez, the historical evidence relied upon by Faretta as
identifying a right of self-representation is not always useful because it pertained to times when
lawyers were scarce, often mistrusted, and not readily available to the average person accused of
crime. Martinez, 528 U.S. at 156, 120 S.Ct. at 688. For one who could not obtain a lawyer, self-representation was the only feasible alternative to asserting no defense at all. Id. at 156-57, 120 S.Ct.
at 688. Because an indigent parent in a termination proceeding has a statutory right to counsel and
is not faced with the choice of self-representation or no defense at all, the historical evidence does
not support finding a right of self-representation. See id. at 156-59, 120 S.Ct. at 688-90. Regarding
the second factor, the Sixth Amendment does not apply in parental rights termination proceedings
so its structure cannot provide a basis for finding a constitutional right of self-representation here. 
Finally, given the inapplicability of the Sixth Amendment, any right to self-representation based on
principles of individual autonomy must be grounded in the Due Process Clause. See id. at 161, 120
S.Ct. at 690. In analyzing this issue in Martinez, the Supreme Court was not persuaded that the risk
of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional
right of self-representation is a necessary component of a fair appellate proceeding. Id. at 162, 120
S.Ct. at 691. We likewise find that a right of self-representation is not a necessary component of a
fair parental rights termination proceeding. And inasmuch as Section 107.013 effectively
implements a due process right, a right to self-representation cannot be statutorily implied.
            Hernandez additionally argues that Rule 7 of the Texas Rules of Civil Procedure provides
him with a right to self-representation. Rule 7 provides that “[a]ny party to a suit may appear and
prosecute or defend his rights therein, either in person or by an attorney of the court.” Tex.R.Civ.P.
7. The right to self-representation provided by Rule 7 is not absolute. The Supreme Court has
acknowledged that lawful incarceration results in the limitation of the otherwise unqualified right
of self-representation given to federal litigations by a federal statute. Price v. Johnston, 334 U.S.
266, 285-86, 68 S.Ct. 1049, 1060, 92 L.Ed.2d 1356 (1948). Texas courts have likewise held that an
inmate does not have an absolute right to appear in person in every court proceeding. See In re
Z.L.T., 124 S.W.3d at 165. The inmate’s right of access to the courts must be weighed against the
protection of the correctional system’s integrity. Id. For all of these reasons, we overrule Issue One.
DENIAL OF FAIR TRIAL
            In Issue Three, Hernandez asserts that his right to a fair trial before a neutral and unbiased
judge was violated because the trial judge had a direct pecuniary interest in the case and exhibited
a deep-seated antagonism against him based on political speech Hernandez posted on the Internet. 
            Hernandez, acting pro se, filed a motion to recuse the Honorable Kenneth DeHart, presiding
judge of the 394th District Court of Brewster County. Judge DeHart entered an order of recusal and
the regional administrative judge assigned the Honorable Peter Peca, Senior District Judge, to
preside. During a hearing held on August 5, 2005, Judge Peca stated:
And the reason I had asked everybody to get together here today is because we have
for quite some time scheduled this case for trial on the 29th of this month, with
another hearing that was scheduled for the 26th of this month. And I just heard
yesterday from the Sixth Region saying that the State is out of money to pay me and
we might not be able to try this case at that time. I believe we are over that problem
at this point in time. 

Judge Peca then discussed the issues relevant to the bench warrant, including the security issues,
Hernandez’s prior criminal history, the need to shackle Hernandez in the courtroom, and whether
Hernandez’s presence would be important in judging his demeanor and credibility. Noting that
Hernandez’s website indicated he believed himself to be a political prisoner, Judge Peca did not
anticipate Hernandez’s presence as being helpful to “anything with regard to the best interest of the
child.” Near the conclusion of the brief hearing, the court stated:
All right. So I think that that’s all I need to tell you, that we are still on for trial
because I think we are over the funding problems and we are not going to be here on
the 26th because we don’t have to take up the security issues anymore. And we will
get started with the jury selection on Monday morning the 29th. 

Hernandez did not attend this hearing in person or telephonically. He did not file a motion to recuse
raising these grounds, but he did file a combined motion for new trial and statement of points on
which he intended to appeal alleging that the trial court considered extrajudicial materials, i.e., the 
website, as a ground for refusing to issue a bench warrant. He did not challenge Judge Peca’s
impartiality, nor did he allege that Judge Peca was biased because of a direct pecuniary interest in
the case or an extrajudicial source.
            A party intending to appeal a termination order is required to file with the trial court, not later
than the 15th day after the date a final order is signed by the trial judge, a statement of the point or
points on which the party intends to appeal. Tex.Fam.Code Ann. § 263.405(b)(Vernon Supp.
2006). The statement may be combined with a motion for a new trial. Id. The appellate court may
not consider any issue that was not specifically presented to the trial court in a timely filed statement
of the points on which the party intends to appeal or in a statement combined with a motion for new
trial. Tex.Fam.Code Ann. § 263.405(i). Because Hernandez did not set forth the bias issues in his
combined motion for new trial and statement, we are precluded from reviewing them on appeal. 
Issue Three is overruled.
CHILD’S ATTORNEY AD LITEM
            In Issue Four, Hernandez contends that the trial court abused its discretion by denying his
motion to disqualify the attorney ad litem appointed to represent the child. He alleges that the ad
litem had a conflict of interest and provided ineffective assistance of counsel because she did not
challenge any of the temporary orders. Because Hernandez did not raise these issues in his combined
motion for new trial and statement, we will not address them on appeal. Tex.Fam.Code Ann. §
263.405(i). Issue Four is overruled.
LEGAL AND FACTUAL SUFFICIENCY
            In Issue Five, Hernandez challenges the legal and factual sufficiency of the evidence
supporting the order of termination. In his combined motion for new trial and statement of points,
he alleged in a single sentence that the evidence was legally and factually insufficient to uphold the
jury’s verdict and the order of termination, but he did not provide a more specific argument. Under
Section 263.405(i), a claim that a judicial decision is contrary to the evidence or that the evidence
is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal.
Tex.Fam.Code Ann. § 263.405(i). Since Hernandez’s general statement that the evidence is legally
and factually insufficient is inadequate to preserve these issues for review, we overrule Issue Five.
EFFECTIVE ASSISTANCE OF COUNSEL
            In Issue Six, Hernandez argues that he was denied the effective assistance of counsel at trial
because counsel: (1) expressed her personal dislike of Hernandez; (2) placed the wrong legal burden
on the Department as to the Section 161.001(1)(Q)


 allegation; (3) failed to effectively cross-examine
the Department’s principal witnesses; and (4) failed to call Patsy Villarreal as a witness on behalf
of Hernandez.
            Hernandez raised the effective assistance of counsel issue in his combined motion for new
trial and statement of issues, but he based it on counsel’s personal dislike of him and counsel’s
failure to raise various challenges to the validity of Hernandez’s aggravated assault conviction and
sentence. He did not allege that counsel placed the wrong legal burden on the Department as to the
“Q” allegation, nor did he raise counsel’s failure to cross-examine the Department’s witnesses or her
failure to call Villarreal as a witness. These issues are not preserved for review. Tex.Fam.Code
Ann. § 263.405(i). Our review is limited to counsel’s purported personal dislike of Hernandez.
            An indigent parent who is appointed counsel pursuant to Section 107.013 (a)(1) has a right
to the effective assistance of counsel. In re M.S., 115 S.W.3d 534, 544 (Tex. 2003). The proper
standard for determining claims of ineffective assistance is the two-step analysis adopted by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
674 (1984). In re M.S., 115 S.W.3d at 545. Under the first prong, Hernandez must show that
counsel’s performance was deficient. In re M.S., 115 S.W.3d at 545. We must primarily focus on
whether counsel performed in a “reasonably effective” manner. Id. Counsel’s performance falls
below acceptable levels of performance when the representation is so grossly deficient as to render
proceedings fundamentally unfair. Id. In this process, we must give great deference to counsel’s
performance, indulging a strong presumption that counsel’s conduct falls within the wide range of
reasonable professional assistance, including the possibility that counsel’s actions are strategic. Id. 
It is only when the conduct was so outrageous that no competent attorney would have engaged in it,
that the challenged conduct will constitute ineffective assistance. Id. Under the second prong, 
Hernandez must establish that counsel’s defective performance caused harm. See id. at 549-50. 
Harm is established by showing that there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. See id. at 550.
            Citing Rickman v. Bell, 131 F.3d 1150, 1158 (6th Cir. 1997), Hernandez contends that
counsel’s personal fears and repugnance amounted to a disqualifying conflict of interest that resulted
in a denial of effective assistance of counsel. In Rickman, the Sixth Circuit found that counsel’s total
failure to actively advocate the defendant’s cause and his repeated expressions of hostility toward
the defendant, amounted to constructive denial of assistance of counsel. Hernandez’s reliance on
Rickman is misplaced because the record does not reflect that counsel totally failed to advocate
Hernandez’s cause or that she repeatedly expressed hostility towards Hernandez in front of the jury. 
We have found only one occasion where counsel expressed concern about Hernandez’s appearance
in the courtroom. At a pretrial hearing on her motion to withdraw, counsel expressed some
reluctance in raising the issue but stated that she would not feel comfortable sitting next to
Hernandez in the courtroom unless he were restrained. The trial judge assured counsel that he would
discuss courtroom security with the sheriff and advised her not to be concerned. Hernandez, who
was attending the hearing by telephone, objected to counsel’s statement on the ground that it
indicated a conflict of interest. The court overruled that objection and ruled that counsel would
continue in her representation.
            In his motion for new trial affidavit, Hernandez alleged that counsel “indicated her
displeasure with her appointment to the case, and her personal feelings of dislike and repugnancy
against me, based on my criminal record and my website, were all clear to me.” Even assuming that
counsel actually did not like Hernandez as he claims, we are unable to find any evidence in the
record that counsel’s feelings caused her to performance to be deficient. Counsel did not express
any fear of or hostility towards Hernandez in front of the jury and she zealously advocated his cause
throughout her representation. Hernandez has failed to rebut the presumption that counsel’s conduct
falls within the wide range of reasonable professional assistance. It is therefore unnecessary to
address the second prong of Strickland. Issue Six is overruled. 
MOTION FOR NEW TRIAL
            In Issue Seven, Hernandez argues that the trial court erred by failing to provide him with an
evidentiary hearing on his motion for new trial. He contends that he was entitled to an evidentiary
hearing on his complaints about judicial bias and ineffective assistance of counsel. But he did not 
complain about bias in his motion for new trial and was not entitled to an evidentiary hearing on that
issue. As for his complaint that counsel rendered ineffective assistance because she disliked him,
it did not require an evidentiary hearing. Even if we assume that counsel actually disliked Hernandez
as he claims, there is no evidence in the record that counsel’s performance was deficient as a result.
            We also conclude that Hernandez was not entitled to an evidentiary hearing with respect to
his contention that counsel was ineffective because she failed to collaterally attack his aggravated
assault conviction. Hernandez has cited one case in support of his position that he is entitled to
collaterally attack his final conviction


 in the context of the terminating proceeding. See In re S.J.G.,
124 S.W.3d 237 (Tex.App.--Fort Worth 2003, pet. denied). There, the defendant pled guilty to
sexually assaulting his child and was sentenced to imprisonment for thirty-five years. The State
sought to terminate the defendant’s parental rights to S.J.G. who was six years old at the time of the
termination proceeding. At the hearing, the defendant denied the sexual assault and claimed he was
fooled into pleading guilty. He did not remember his voluntary oral confession to the police because
he had been drinking at the time. He also testified that he was in the process of filing an application
for writ of habeas corpus that could result in the reversal of his conviction. Based on the guilty plea,
the confession, and other evidence, the trial court found that termination was appropriate under
section 161.001(1)(D), (E), (L), and (Q). On appeal, the father challenged the factual sufficiency of
the evidence to sustain the court’s finding. The court of appeals found the evidence sufficient to
prove that he knowingly placed S.J.G. in conditions or surroundings that endangered her physical
and emotional well-being and that he engaged in conduct that endangered S.J.G.’s physical or
emotional well-being. See Tex.Fam.Code Ann. § 161.001(1)(D), (E). The court of appeals did not
address whether the evidence was sufficient to sustain the other two grounds, nor was it asked to
determine (1) the admissibility of the defendant’s testimony denying that he committed the offense,
or (2) whether a defendant is permitted to collaterally attack a final conviction. We find the case
distinguishable. In the absence of any other authority permitting Hernandez to collaterally attack his
final conviction, we conclude that Hernandez was not entitled to an evidentiary hearing on this
allegation. We overrule Issue Seven. Having overruled each issue for review, we affirm the order
of termination.
October 26, 2006                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before McClure, J., Chew, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment