# IN THE SUPREME COURT OF TEXAS

No. 20-0055

IN THE INTEREST OF D.T., A CHILD

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

**Argued January 7, 2021**

JUSTICE HUDDLE delivered the opinion of the Court, in which JUSTICE DEVINE, JUSTICE BLACKLOCK, JUSTICE BUSBY, and JUSTICE BLAND joined.

JUSTICE BOYD filed a concurring opinion, in which CHIEF JUSTICE HECHT and JUSTICE LEHRMANN joined.

Nearly two decades ago, this Court recognized in *In re M.S.* that indigent persons who are parties to a government-initiated suit to terminate their parental rights have a right to effective appointed counsel. 115 S.W.3d 534, 544 (Tex. 2003). Reasoning that the right to appointed counsel carries an implicit requirement that such counsel be competent, *M.S.* held that indigent parents in a state-initiated suit to terminate their parental rights could challenge their counsel's performance in the representation by asserting an ineffective-assistance claim on appeal. *Id.* Today, we must determine whether parents in government-initiated suits to terminate the parent–child relationship who retain counsel of their choosing, as the mother in this case did, may also challenge their counsel's performance by asserting an ineffective-assistance claim. We hold that they can, and that the court of appeals erred in rejecting the mother's ineffective-assistance claim without addressing its merits, on the basis that trial counsel was retained rather than appointed.

However, because we conclude the mother's ineffective-assistance claim fails under *Strickland v. Washington* as a matter of law, we affirm the court of appeals' judgment.

## I. Background

D.T.'s mother (Mother) was involved with the Department of Family and Protective Services before D.T.'s birth. In 2015, when Mother was nineteen, the Department removed her first child—D.T.'s older sister—after Mother experienced a psychotic episode resulting in Mother's involuntary commitment to a psychiatric hospital, where she tested positive for methamphetamines. The Department's initial goal in that case was reunification, so Mother was ordered to complete a service plan, including drug treatment. But Mother did not complete the plan. She instead relinquished her rights to D.T.'s sister.

The Department intervened again shortly after D.T.'s birth in late 2016. Because Mother had not had prenatal care, doctors ordered that D.T. remain in the hospital for a few days for observation. But Mother left the hospital with D.T. at three o'clock in the morning—before they were released and against medical advice—because hospital staff would not give Mother pain medication for a toothache. This, together with Mother's history of drug use, prompted the Department to seek an order under Family Code chapter 264 requiring Mother to complete a service plan. About a month later, Mother was arrested on theft charges, and the Department took possession of D.T. and sought termination.[1] Following an adversary hearing, the trial court found the Department had not met its burden for removal and ordered D.T. returned to Mother. In accordance with the Department's concerns, Mother was ordered to complete a service plan

---

[1] Under Texas Family Code section 161.001(b), the State of Texas may seek to involuntarily terminate parental rights. To do so, the State must prove by clear and convincing evidence both that a parent engaged in one of the twenty-one statutory grounds for termination, and that termination of the parent–child relationship is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)(A)–(U), (b)(2).

including a psychological assessment, drug and alcohol assessments, random drug tests, and parenting classes.

In late 2017, when D.T. was eleven months old, Mother gave birth to a third child. In early 2018, when the infant sibling was two months old, the sibling died under Mother's care while both were sleeping. There was conflicting evidence about whether the infant was sleeping in the same bed as Mother or in a nearby bassinet. The autopsy revealed the cause of death was undetermined but reflected that the unsafe sleeping environment was a possible cause or contributing factor. Following the infant's death, D.T. was again removed from Mother's care.[2] At the time the Department took possession, one-year-old D.T. tested positive for marijuana and had unexplained bruises and a fractured hand. D.T. was placed with a foster family who wishes to adopt him.

While the case was pending, Mother and her boyfriend,[3] with whom she lived, had multiple positive tests for marijuana. The boyfriend also tested positive for methamphetamines. Mother was ordered to work services, including anger-management classes, after various outbursts with Department employees and social workers. One caseworker observed Mother being "rough" with D.T. during a visit due to her anger with the Department. Mother conceded that there had been another incident at a mental-health center in which Mother threw a chair after being rescheduled for outpatient treatment. Throughout the proceedings, the trial court found that Mother was not making progress and was instead failing to comply with the court-ordered service plan.

Although the trial court had found Mother indigent and appointed counsel to represent her, Mother retained new counsel about six months before the trial. The record reflects that Mother's

---

[2] Because D.T. had been living in Hunt County for over six months, the original proceeding in Rockwall County was transferred to Hunt County and consolidated with this termination suit. *See* TEX. FAM. CODE §§ 155.201(b), 262.203(a)(2).

[3] D.T.'s alleged father, with whom Mother was no longer living, waived his parental rights. His parental rights were terminated along with Mother's in the trial court's termination order, and he is not a party to this appeal.

retained counsel participated in two permanency hearings. It also reflects he was active and engaged throughout the four-day trial. He conducted a voir dire examination, made an opening statement, cross-examined each of the Department's witnesses, and made appropriate evidentiary objections. After the Department rested, Mother's retained counsel called three character witnesses, re-called Mother, and through these witnesses and documentary exhibits sought to demonstrate Mother's bond with and affection for D.T. Counsel's closing argument addressed the key elements of the Department's case and noted the Department's heightened burden of proof.

The jury unanimously found that grounds existed for termination under the Family Code and that termination was in D.T.'s best interest. Mother's retained counsel filed a notice of appeal but did not file a motion for new trial or take any other steps to preserve a challenge to the legal or factual sufficiency of the evidence. One month after the notice of appeal was filed, Mother's retained counsel was suspended from the practice of law and thus became unable to continue the representation. The court of appeals abated the appeal and remanded for the appointment of new counsel, noting in its order that, because Mother had been found indigent, she was presumed to remain indigent and was entitled to appointed counsel.

The trial court appointed Mother's appellate counsel within the time in which a post-judgment motion could have been filed, but none was. Instead, Mother raised these two issues in the court of appeals: (1) the evidence was legally and factually insufficient to support the jury's verdict, and (2) her retained counsel rendered ineffective assistance. 593 S.W.3d 437, 438 (Tex. App.—Texarkana 2019). The court of appeals affirmed. It rejected Mother's challenge to the sufficiency of the evidence without addressing the merits because it was not preserved. *Id.* at 439. The court also held Mother could not raise an ineffective-assistance-of-counsel challenge because her counsel was retained. *Id.* at 439–40. Mother petitioned this Court, and we granted review.

4

**II. Analysis**

In this Court, Mother's sole issue is whether the court of appeals erred by holding that she could not challenge counsel's effectiveness because her trial counsel was privately retained rather than court-appointed. The Department responds that (1) the court of appeals correctly determined that a claim of ineffective assistance of counsel cannot be brought when the parent's counsel is retained; and (2) even if Mother could challenge retained counsel's effectiveness, Mother cannot demonstrate that her counsel was ineffective under *Strickland v. Washington*'s well-established two-prong test. *See* 466 U.S. 668, 687 (1984). We address these points in turn.

A.    **Parents in state-initiated parental-rights termination cases may assert ineffective-assistance-of-counsel claims, regardless of whether counsel is court-appointed or privately retained.**

The Supreme Court of the United States has long recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.). We have also recognized the fundamental nature of the parental right to make child-rearing decisions. *See, e.g.*, *In re C.J.C.*, 603 S.W.3d 804, 807 (Tex. 2020) (orig. proceeding).

In this case, the Department seeks not only to infringe on Mother's right to care and make decisions for D.T., but to terminate *all* of Mother's parental rights based on the jury findings that clear and convincing evidence supports termination under at least one statutory ground and that termination is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b). "Termination of parental rights is traumatic, permanent, and irrevocable." *M.S.*, 115 S.W.3d at 549. As some members of our Court have previously—and rightly—noted, parental termination constitutes the "death penalty" of civil cases. *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring).

While the Supreme Court has noted the fundamental nature of the interests at stake in parental-termination cases, it held in *Lassiter v. Department of Social Services* that the United States Constitution does not require the appointment of counsel for parents in every parental-termination proceeding. 452 U.S. 18, 31 (1981). The *Lassiter* Court noted that it was "neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." *Id.* at 32 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). The Court instead left the decision of whether due process requires appointment of counsel in a particular case to be decided by the trial court, subject to appellate review. *Id.* But the Court also recognized that states may adopt their own standards, and that "[a] wise public policy . . . may require that higher standards be adopted than those minimally tolerable under the Constitution." *Id.* at 33.

Consistent with *Lassiter*, the Texas Legislature chose to afford parents opposing state-initiated termination proceedings more protection than the United States Constitution demands. Texas Family Code section 107.013(a) provides: "the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to" a suit in which the state seeks to terminate a parent's rights. TEX. FAM. CODE § 107.013(a).

This Court considered section 107.013(a) in *M.S.* and concluded that the statutory right to appointed counsel in such cases "embodies the right to effective counsel." 115 S.W.3d at 544. We reasoned that "[i]t would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, as evidenced by the statutory right to appointed counsel, and, on the other hand, not require that counsel perform effectively." *Id.* (quoting *In re K.L.*, 91 S.W.3d 1, 13 (Tex. App.—Fort Worth 2002, no pet.)). We held that the right to counsel created by Family Code section 107.013(a) carries "an implicit requirement that counsel's assistance be

6

competent and effective," and, further, that a parent with appointed counsel could challenge counsel's performance by asserting an ineffective-assistance-of-counsel claim on appeal. *Id.*

Our courts of appeals have generally limited our holding in *M.S.* to apply only in cases in which the parent opposing termination was indigent and had appointed counsel. For example, in *In re V.G.*, an indigent father appealed a termination order and asserted a claim for ineffective assistance of counsel. No. 04-08-00522-CV, 2009 WL 2767040, at *12 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.). The Fourth Court of Appeals held the father could not raise an ineffective-assistance claim because his counsel was retained rather than appointed. *Id.* Other courts have relied on *V.G.* to reach the same conclusion. *See, e.g.*, *In re Z.C.*, No. 12-15-00279-CV, 2016 WL 1730740, at *2 (Tex. App.—Tyler Apr. 29, 2016, no pet.) (mem. op.) (citing *V.G.*); *In re J.B.*, No. 07-14-00187-CV, 2014 WL 5799616, at *5 (Tex. App.—Amarillo Nov. 6, 2014, no pet.) (mem. op.) (same). Relying on these authorities, the court below followed suit. 593 S.W.3d at 440; *see also In re A.P.*, No. 05-19-01536-CV, 2020 WL 3071708, at *6 (Tex. App.—Dallas June 10, 2020, no pet.) (mem. op.) (also holding that parents cannot bring ineffective-assistance claims against retained counsel and citing the Sixth Court of Appeals' opinion).

The Fourteenth Court of Appeals, however, reached a different conclusion. *In re E.R.W.*, 528 S.W.3d 251 (Tex. App.—Houston [14th Dist.] 2017, no pet.). It began by noting that courts generally have declined to allow parties to assert ineffective assistance of counsel based on a *common-law* right to assistance of counsel. *Id.* at 258. Rather, "courts have required a constitutional or statutory right to assistance of counsel before a party may assert ineffective assistance of counsel." *Id.* (citations omitted). The court then analyzed a 2015 amendment to section 107.013, which added a new subsection (a–1). The current version of section 107.013 states, in relevant part:

7

(a)     In a suit filed by a governmental entity under Subtitle E[4] in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of:

    (1) an indigent parent of the child who responds in opposition to the termination or appointment . . . .

(a–1)  In a suit described by Subsection (a), if a parent is not represented by an attorney at the parent's first appearance in court, the court shall inform the parent of:

    (1) *the right to be represented by an attorney*; and

    (2) if the parent is indigent and appears in opposition to the suit, the right to an attorney ad litem appointed by the court.

TEX. FAM. CODE § 107.013(a)(1), (a–1) (emphasis added). Based on subsection (a–1)(1), the court held the 2015 amendment to section 107.013 created a right to assistance of counsel without regard to a parent's indigence. *E.R.W.*, 528 S.W.3d at 261. The court explained: "[t]his right to assistance of counsel refers to a party's right to have an attorney represent the party in a case rather than a party's right to a court-appointed lawyer if the party is indigent, although the indigent party's right to appointment of counsel is based on a right to assistance of counsel." *Id*. at 258.

The Fourteenth Court reasoned that subsection (a–1)(1) unambiguously confers on parents in these suits "the right to be represented by an attorney," and thus concluded "under the current version of section 107.013, a non-indigent parent in a [government-initiated termination suit] has a statutory right to representation by counsel." *Id.* at 261. This right, together with our holding in *M.S.*, led the court to conclude that the current iteration of section 107.013 "provides a basis for the parent to challenge a judgment in a [government-initiated termination suit] based on the ineffective assistance of retained counsel." *Id*. It then reviewed the mother's ineffective-assistance claim under *Strickland v. Washington. Id*. at 261–63.

---

[4] TEX. FAM. CODE §§ 261.001–266.013.

8

In evaluating Family Code section 107.013, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We ascertain that intent from the language the Legislature used in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the statute. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We read the statute as a whole, giving meaning to the language consistent with other provisions in the statute. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).

Subsection 107.013(a–1)(1) unambiguously mandates that, if a parent in a government-initiated termination case is unrepresented at the parent's first appearance, trial courts shall inform the parent of "the right to be represented by an attorney." TEX. FAM. CODE § 107.013(a–1). This mandate applies without regard to indigency or any other qualification. *Id.* And the requirement is distinct from the statutory provisions relating to *appointment* of counsel for indigent parents, which appear in subsections (a) and (a–1)(2). Considering the plain meaning of the Legislature's chosen words, we agree with the Fourteenth Court of Appeals that subsection (a–1)(1) unambiguously confers on all parents opposing government-initiated termination suits the right to have the assistance of counsel without regard to indigence.

The Legislature modified Family Code section 107.013 to add subsection (a–1) in 2015 knowing that, under *M.S.*, the right to counsel in termination suits brought by the state embodies a requirement that counsel be competent and effective. *M.S.*, 115 S.W.3d at 544. We presume the Legislature is aware of relevant case law when it enacts or modifies statutes. *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding). Accordingly, we conclude that the current version of Family Code section 107.103 evidences the Legislature's intent to afford all parents

9

appearing in opposition to state-initiated parental-rights termination suits the right to *effective* counsel regardless of whether counsel is appointed or retained. *See* TEX. FAM. CODE § 107.013; *M.S.*, 115 S.W.3d at 544.

The concurrence asserts that subsection (a–1) creates only the right to be informed of a general right to be represented by counsel as in any civil lawsuit. *Post* at ___. We disagree, because section 107.013(a) mandates appointment of counsel for indigent parents, whereas no statute mandates appointment of counsel for indigent litigants in ordinary civil cases. Statutes authorizing trial courts to appoint counsel in civil cases do exist, but because appointment is discretionary under those statutes, they cannot be said to provide a right to counsel, as does Family Code section 107.013. *Compare* TEX. FAM. CODE § 107.013(a) (mandating that trial court "shall appoint" attorney ad litem), *with* TEX. GOV'T CODE § 24.016 ("A district judge *may appoint* counsel to attend to the cause of a party who makes an affidavit that he is too poor to employ counsel to attend to the cause." (emphasis added)); *id*. § 26.049 ("The county judge *may appoint* counsel to represent a party who makes an affidavit that he is too poor to employ counsel." (emphasis added)).

Our reading of Family Code section 107.013 coheres with longstanding precedent eliminating disparate treatment of persons based on whether their counsel is appointed or retained. In criminal cases in which the right to counsel derives from the Sixth Amendment, the Supreme Court of the United States and our Court of Criminal Appeals long ago concluded defendants may bring an ineffective-assistance-of-counsel claim regardless of whether counsel is appointed or retained. *See Cuyler v. Sullivan*, 446 U.S. 335, 344–45 (1980); *Ex parte Duffy*, 607 S.W.2d 507, 509 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). Many of the same concerns that led courts to eliminate the distinction

10

between appointed and retained counsel for ineffective-assistance claims in criminal cases are present in civil parental-rights termination cases initiated by the state.

In *Cuyler*, the Supreme Court recognized that, although retaining one's own counsel does not implicate state action, the state-initiated trial itself invokes the Fourteenth Amendment's due-process concerns as it is a proceeding "initiated and conducted by the State itself." 446 U.S. at 343. Without effective counsel "able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Id.* The Court noted that, while most counsel will adequately protect a party's rights, "experience teaches that, in some cases, retained counsel will not provide adequate representation." *Id.* at 344. A criminal defendant should not forfeit legal protections due to an "often uninformed decision to retain a particular lawyer." *Id.* (citing Sam Polur, *Retained Counsel, Assigned Counsel: Why the Dichotomy?*, 55 A.B.A. J. 254, 255 (1969)). The Court concluded, "we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." *Id.* at 344–45. Our Court of Criminal Appeals has likewise noted that *Cuyler* "put an end to the 'double standard' emanating from the retained-appointed dichotomy."[5] *Duffy*, 607 S.W.2d at 514.

As in criminal proceedings, state-initiated termination proceedings invoke the need for the protection of fundamental liberty interests. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980) (explaining "the natural right between parents and their children is one of constitutional dimensions"). And, just like in criminal cases, the state is the actor seeking to curtail the parent's

---

[5] The concurrence criticizes the Court's invocation of *Cuyler* because *Cuyler* is rooted in the Sixth Amendment. *Post* at ___. The Sixth Amendment's guarantee of assistance of counsel in criminal proceedings, of course, does not apply in civil cases. *See* U.S. CONST. amend. VI. But we analogize to *Cuyler* because parental-termination cases, like criminal cases, involve the state's attempt to impede on a fundamental liberty interest. So, while *Cuyler* is not controlling in this civil case, we are nonetheless persuaded by its logic, which rejected the practice of affording lesser procedural safeguards for parties with retained counsel.

11

liberty interest, regardless of whether the parent's counsel is appointed or retained. The Legislature determined that when the state seeks to terminate a parent's fundamental liberty interest in making decisions regarding the care of his or her child, gravely and permanently impacting both, the stakes justify affording all parents the right to effective counsel to reduce the risk of an erroneous deprivation and unjust outcome.

We hold that a parent who responds in opposition to a government-initiated suit seeking termination of the parent–child relationship may assert a claim for ineffective assistance of counsel on appeal regardless of whether the parent's counsel was appointed or retained. TEX. FAM. CODE § 107.013(a), (a–1); *M.S.*, 115 S.W.3d at 544 (right to counsel embodies right to effective counsel whose performance may be challenged on appeal). The court of appeals here should have considered the merits of Mother's claim of ineffective assistance of counsel under *Strickland v. Washington*.[6] *See M.S.*, 115 S.W.3d at 545 (adopting the well-established *Strickland* standard from the criminal law).

## B. Counsel's performance was not deficient under *Strickland*.

Although the court of appeals erred by refusing to consider Mother's ineffective-assistance claim, the Department argues the court of appeals' judgment should be affirmed because Mother's claim fails as a matter of law. We agree.

---

[6] The concurrence asserts our holding that parents with retained counsel can bring ineffective-assistance-of-counsel claims in state-initiated parental-termination cases is mere dicta because we ultimately conclude that Mother's counsel cannot meet the *Strickland* standard. *Post* at ___. Not so. Mother's petition presented a single issue: whether parents in these cases could assert ineffective-assistance-of-counsel claims against retained counsel. Deciding the question presented by a petition is a holding, not dicta. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 559 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (explaining that a statement is not dicta if it "constitutes an explication of the governing rules of law" and received the court's "full and careful consideration" (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004))). And a holding is not rendered dicta merely because the party who advocated for it did not prevail. *United States v. Adamson*, 665 F.2d 649, 656 n.19 (5th Cir. 1982) ("It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter." (quoting *Fla. Cent. R.R. Co. v. Schutte*, 103 U.S. 118, 143 (1881))).

Ineffective-assistance-of-counsel claims in parental-termination cases, as in criminal cases, are governed by the United States Supreme Court's two-prong test articulated in *Strickland v. Washington*. *M.S.*, 115 S.W.3d at 544–45. It requires the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. A party claiming ineffective assistance of counsel must satisfy both prongs of the *Strickland* test to succeed. *M.S.*, 115 S.W.3d at 545.

In examining counsel's performance under the first prong, "we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *Id.* (quoting *Strickland*, 466 U.S. at 687). Counsel's performance falls below acceptable levels only when the "representation is so grossly deficient as to render proceedings fundamentally unfair." *Id.* (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). We give great deference to counsel's choices and indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689). The challenged conduct will constitute ineffective assistance only when "the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). In cases where a party challenges counsel's failure to move for a new trial, there is a rebuttable presumption that the motion was considered by that party and rejected. *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).

13

In the court of appeals, Mother articulated two bases for contending trial counsel was ineffective. First, she asserts trial counsel failed to timely file a witness list and had not reviewed the Department's timely filed witness list. Neither of these claimed transgressions constitutes the type of gross deficiency required under *Strickland*, and neither produced the prejudice *Strickland* requires. The record shows that, after opening statements, the Department's counsel objected that Mother's counsel failed to comply with a local rule requiring each party to provide a witness list ten days before trial. However, the trial court never ruled on the objection, the Department agreed Mother's counsel should not be prohibited from calling witnesses, and Mother's counsel, in fact, was not precluded from proffering any witness. Indeed, he presented four.

Turning to counsel's failure to review the Department's witness list, we disagree with Mother's conclusory statement that the perceived error or prejudice is sufficient under *Strickland*. Mother asserts, without any support, that reviewing the opposing side's witness list is "a fundamental element of basic trial preparation," that "[n]o attorney in their right mind would deliberately fail to review the opposing side's witness list,"[7] and that counsel's conduct was "so outrageous that no reasonable attorney would have engaged in such conduct." While being aware of the identity of witnesses the other side intends to call at trial is important to trial preparation, Mother makes no showing that her counsel's alleged failure to review the list was conduct "so grossly deficient as to render proceedings fundamentally unfair." *See M.S.*, 115 S.W.3d at 545 (quoting *Brewer*, 649 S.W.2d at 630). Neither the record nor Mother's argument suggests that any of the Department's witnesses were unexpected or had not been previously disclosed, or that counsel's cross- or re-cross-examination of these witnesses was ineffective or flawed in any way.

---

[7] Nothing in the record suggests that Mother's counsel "deliberately" failed to review the witness list. To the contrary, the record merely shows that Mother's counsel represented to the trial court he had not seen the witness list, and the list was called to his attention before any witnesses (besides Mother) testified at trial.

14

Mother's complaints about trial counsel's failure to file and review witness lists fall short of satisfying *Strickland*. *See M.S.*, 115 S.W.3d at 545 (explaining that counsel's conduct is deficient only if it is "so outrageous that no competent attorney would have engaged in it" and produces a fundamentally unfair trial (quoting *Garcia*, 57 S.W.3d at 440)).

Mother's second ineffective-assistance argument is that her counsel failed to preserve her right to challenge legal or factual sufficiency of the evidence. It is undisputed that Mother's counsel did not file a motion for new trial and did not otherwise preserve a sufficiency challenge.[8] However, in reviewing an ineffective-assistance challenge under *Strickland*, courts must indulge in the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This includes the possibility that counsel's decision not to challenge sufficiency was based on strategy, or because counsel, in their professional opinion, believed the evidence sufficient such that a motion for new trial was not warranted. *M.S.*, 115 S.W.3d at 549 (citing *Strickland*, 466 U.S. at 689, and *Smith v. State*, 17 S.W.3d 660, 662 (Tex. Crim. App. 2000)).

Significantly, when a motion for new trial is not filed, "the rebuttable presumption is that it was considered by the appellant and rejected." *Smith*, 17 S.W.3d at 662 (quoting *Oldham*, 977 S.W.2d at 363). We find nothing in the record to rebut this presumption, and Mother made no effort to rebut it in her briefing. On the contrary, the presumption is supported both by the strength of the Department's case and the fact that Mother's new appellate counsel was appointed more than two weeks before the deadline to file a post-judgment motion, but did not file one.

---

[8] After a jury trial, a legal-sufficiency challenge may be preserved in the trial court in one of the following ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). Preservation of a factual-sufficiency challenge requires a motion for new trial. *M.S.*, 115 S.W.3d at 547 (citing TEX. R. CIV. P. 324(b)(2)).

We conclude that Mother failed to meet her burden to show that her counsel's performance "fell below an objective standard of reasonableness" under *Strickland*'s first prong. *M.S.*, 115 S.W.3d at 549 (quoting *Garcia*, 57 S.W.3d at 440). We therefore hold that her ineffective-assistance claim fails as a matter of law.

### III. Conclusion

In suits filed by a governmental entity under Subtitle E of the Family Code in which termination of the parent–child relationship is requested, parents may assert a claim for ineffective assistance of counsel, regardless of whether counsel is retained or appointed. In this case, the court of appeals erred by rejecting Mother's claim for ineffective assistance without addressing its merits under *Strickland*. However, because our analysis confirms that Mother cannot establish her counsel's performance was deficient under *Strickland*, we hold that her ineffective-assistance claim fails, and we affirm the judgment of the court of appeals.

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 25, 2021

16