

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00187-CV

---

### IN THE INTEREST OF G.P.-J.R. AND C.S.-L.R., CHILDREN

---

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 84755-L1, Honorable James W. Anderson, Presiding

---

December 10, 2025

## MEMORANDUM OPINION

### Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Nine-year-old "C.R."[1] told her therapist that the day she was removed from her mother was the best day of her life because she was finally safe. Her older brother "G.R." had been sexually abusing her while their mother punished C.R. for complaining. The children lived without electricity or running water, missed school when they missed the bus, and went hungry when they could not get to school. Dog feces covered their carpet.

---

[1] To protect the privacy of the parties involved, we refer to the children by initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

After a suit by the Department of Family and Protective Services to terminate Mother's parental rights,[2] the trial court ordered them terminated pursuant to § 161.001 (b)(1)(D), (E), and (O) of the Texas Family Code. By four issues, Mother challenges the evidence and court's rulings in reaching that decision. We affirm.

## BACKGROUND

The Department had been involved with this family for most of the children's lives, with previous removals and reunifications. This time, the Department received reports that the children lacked food and utilities, missed school and medical appointments, lived in unsanitary conditions, and were at risk of being evicted. Mother's boyfriend was a known methamphetamine user who spent significant time with the children despite the Department's concerns. Moreover, the children were having behavior issues at school and G.R., a special education student, was not receiving necessary medication.

When the investigator attempted to check on the children, he found G.R. at school but C.R. was repeatedly absent. Mother canceled every scheduled meeting with the Department at the last minute. When the Department finally went to remove the children, Mother did not even know where G.R. was. Both children seemed happy to be removed.

After removal, disturbing facts emerged. C.R. disclosed that G.R. had been sexually abusing her—"putting his pee pee in her butt"—on multiple occasions. According to statements C.R. made in therapy, she would be punished when she attempted to report

---

[2] The Department also sought to terminate Father's rights but abandoned that claim. Father was named possessory conservator and is not a party to this appeal.

G.R.'s abuse to Mother. The young girl could not understand why Mother refused to stop G.R. and protect her.

G.R. was charged with sexual assault and sent to Pegasus, a residential treatment facility, where he admitted to the abuse. When Mother learned of the charges, she defended G.R., insisted he was forced to confess, and opposed his treatment.

The family's living conditions were equally troubling. The house lacked electricity and had minimal, leaking water. The children bathed with Walmart wipes. Dog feces and urine covered the floors. If they missed the bus, they did not go to school, which meant the children would not eat. Mother and her boyfriend used methamphetamine, and C.R. once saw Mother smoking something from "a vape with a circle on the end." Mother and boyfriend also fought violently in front of the children, once with Mother throwing an axe into the wall.

The Department provided Mother with a service plan and regularly attempted contact. Mother refused all cooperation. She would not complete services, attend meetings, or submit to court-ordered drug testing, missing at least five requested tests. Her only responses were combative and taunting.

After their removal, both children thrived in their new environments. C.R. was diagnosed with reactive airway disease requiring six medications. She attends school regularly and is catching up to her age-appropriate grade level. G.R. is progressing well in treatment with Pegasus and can now hold full conversations, something he could not do at removal.

After trial without a jury, the trial court found the Department had made multiple efforts to reunify the family, but Mother refused to cooperate in any way and completed no services. The court also found that Mother knowingly placed the children or knowingly allowed them to remain in conditions or surroundings which endangered the children's physical and emotional wellbeing. The court further found Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional wellbeing. The court found that termination of Mother's parental rights was in the children's best interests.

**ANALYSIS**

A parent's right to her child is "far more precious than any property right." *In re H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App. LEXIS, at *12 (Tex. App.—Amarillo July 30, 2025, pet. denied) (citing *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). We therefore strictly scrutinize and strictly construe termination statutes in favor of the parent. *Id.* But parental rights are not absolute: they belong only to those who are sufficiently fit to accept the accompanying responsibilities. *Id.* The primary focus is protecting the child's best interests. *Id.*

A. The Trial Court Properly Admitted C.R.'s Outcries of Abuse

We begin with Mother's second issue, where she contends the trial court erred in admitting C.R.'s statements about sexual abuse under Family Code § 104.006. We review evidentiary rulings for abused discretion. *In re P.E.W.*, 105 S.W.3d 771, 774 (Tex. App.—Amarillo 2003, no pet.).

4

Section 104.006 permits hearsay statements by children twelve or younger describing abuse if: (1) the time, content, and circumstances indicate reliability, and (2) the child testifies or is available to testify, or using the statement is necessary to protect the child's welfare. TEX. FAM. CODE § 104.006.

On appeal, Mother complains testimony that G.R. sexually abused C.R. was not reliable. But Mother failed to preserve this issue by a timely objection at trial.[3] TEX. R. APP. P. 33.1(a). She did not object when therapist Lynn Jennings testified about C.R.'s statements that G.R. "put his pee pee in her butt" or when forensic interviewer Demi Bouvia recounted similar statements. In fact, as to Jennings' testimony, Mother's attorney conceded to the trial court no objection was interposed because "Dr. Jennings has testified in a sufficient way, which is why I did not make an objection to her testimony, because I did not believe that I had an objection based on the foundation laid for what she said."

Even if preserved, the trial court did not abuse its discretion. In finding that § 104.006's requirements had been met, the court implicitly found the statements reliable. *See In re K.L.*, 91 S.W.3d 1, 15–17 (Tex. App.—Fort Worth 2002, no pet). The evidence supports this finding. The reliability of statements made by C.R. are shown, in part, through their consistency to multiple professionals in different settings, described in detail, and confirmed through G.R.'s admission that he sexually abused C.R.

We overrule Mother's second issue.

---

[3] Mother also alleges the unreliability of C.R. saying she was "starving to death," in Mother's care. Again, Mother posed no objection to the statement.

B. Sufficient Evidence Supports the Endangerment Findings

In her first issue, Mother argues that termination under §§ 161.001(b)(1)(D) and (E) is supported by legally and factually insufficient evidence. She does not challenge the evidence supporting termination of her parental rights under § 161.001(b)(1)(O) of the Family Code.[4] Generally, "[o]nly one predicate ground and a best interest finding are necessary for termination, so 'a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground.'" *In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019)).

The failure to challenge the predicate (O) grounds does not end our analysis, however, because predicate ground (M) provides that parental rights may be terminated for other children if the parent has ever lost parental rights due to a "violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." TEX. FAM. CODE § 161.001(b)(1)(M). Termination on predicate grounds D or E thus "has consequences for termination of parental rights as to children in a future proceeding." *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam); *In re N.G.*, 577 S.W.3d at 235.

Clear and convincing evidence refers to proof that produces a firm belief or conviction in the factfinder. TEX. FAM. CODE § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In a legal sufficiency review, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re C.E.,* 687 S.W.3d 304, 308 (Tex.

---

[4] Although predicate ground (O) was deleted from section 161.001(b)(1) in 2025, it remained a valid ground for terminating parental rights at the time the trial court made its findings.

6

2024). Courts "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," but courts "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

When we review the evidence for factual sufficiency, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re A.B.*, 437 S.W.3d 498, 506 (Tex. 2014); *In re Z. N.*, 616 S.W.3d 133, 137 n.6 (Tex. App.—Amarillo 2020, no pet.).[5] We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

"Endanger" means "to expose to loss or injury; to jeopardize." *In re J.W.*, 645 S.W.3d at 748. It requires more than a threat of metaphysical injury but does not require evidence of actual harm to the child. *Id.* Sexual abuse endangers a child. *In re T.D.*, No.

---

[5] The overwhelming majority of appellate courts now refer to the "neutral light" lens when reviewing the evidence for factual sufficiency in parental rights termination cases. *See In re T.L.S.*, No. 05-25-00658-CV, 2025 Tex. App. LEXIS 8996, at *60 (Tex. App.—Dallas Nov. 20, 2025, no pet. h.) (applying "neutral light" review of the evidence under factual sufficiency assessment in parental rights termination appeal); *In re B.A.*, No. 01-25-00201-CV, 2025 Tex. App. LEXIS 7278, at *32–33 (Tex. App.—Houston [1st Dist.] Sept. 16, 2025, no pet. h.) (same); *K. B. v. Tex. Dep't of Family & Protective Services*, No. 03-24-00158-CV, 2024 Tex. App. LEXIS 6106, at *21 (Tex. App.—Austin Aug. 22, 2024, pet. denied) (same); *In re M.F.M.*, No. 14-23-00974-CV, 2024 Tex. App. LEXIS 4376, at *22 (Tex. App.—Houston [14th Dist.] June 25, 2024, pet. denied) (same); *In re S.C.*, No. 04-22-00125-CV, 2022 Tex. App. LEXIS 5960, at *6 (Tex. App.—San Antonio Aug. 17, 2022, pet. denied); *Interest of J.M.*, No. 02-21-00346-CV, 2022 Tex. App. LEXIS 1992, at *43 (Tex. App.—Fort Worth Mar. 24, 2022, no pet.) (same); *In re E.M.R.*, No. 09-20-00299-CV, 2022 Tex. App. LEXIS 788, at *16 (Tex. App.—Beaumont Feb. 3, 2022, no pet.) (same); *In re J.I.*, No. 10-20-00337-CV, 2021 Tex. App. LEXIS 2804, at *21–22 (Tex. App.—Waco Apr. 14, 2021, pet. denied) (same).

04-24-00185-CV, 2024 Tex. App. LEXIS 6790, at *9 (Tex. App.—San Antonio Sept. 13, 2024, no pet.).

Section (D) addresses endangering environments. Endangerment to a child occurs "when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App. LEXIS 5576, at *15–16; *J.S. v. Tex. Dep't of Family & Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). The evidence presented at trial allowed the finder of fact to have formed a firm belief or conviction that Mother knowingly placed her children or allowed them to remain in conditions or surroundings which endangered their physical or emotional well-being. Mother knowingly allowed C.R. to live in an environment where she was sexually abused. When C.R. reported the abuse, Mother punished her. The children lived without basic necessities, including food, electricity, and water. They bathed with nothing but wipes and consistently missed school. They witnessed violent fights between Mother and her boyfriend.

Subsection (E) addresses endangering conduct. *In re E.G.*, 643 S.W.3d 236, 252 (Tex. App.—Amarillo 2022, no pet.); *see* TEX. FAM. CODE § 161.001(b)(1)(E). The evidence shows a course of voluntary, deliberate, and conscious conduct by Mother. *In re R.H.*, 693 S.W.3d 846, 856 (Tex. App.—Fort Worth 2024, pet. denied). Mother's conscious course of conduct endangered both children: punishing C.R. for attempting to report sexual abuse, failing to provide necessities, exposing them to drug use and domestic violence, and refusing all services and drug testing[6] after removal. Mother

---

[6] This allowed the trial court to infer that Mother's test results would have been positive if she had submitted to drug testing. *In re R.H.*, 693 S.W.3d at 857; *see In re A.O.*, No. 05-21-00789-CV, 2022 Tex. App. LEXIS 1499, at *21 (Tex. App.—Dallas Mar. 3, 2022, pet. denied) (mem. op.).

defended G.R., denied any abuse occurred, and refused to acknowledge any problems. Every witness testified Mother knowingly endangered the children.

The evidence is legally and factually sufficient to support the trial court's (D) and (E) finding. We overrule Mother's first issue.

## C. Termination of Mother's Parental Rights is in the Best Interest of the Children

In Mother's fourth issue, she alleges the evidence was legally and factually insufficient to support the finding that termination of her parental rights was in the children's best interests. The best interest analysis is child-centered, focusing on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). As a part of our analysis, we consider evidence regarding a number of factors including those enunciated in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). It is unnecessary for the Department to prove every factor, and evidence supporting one or more statutory grounds may also support the best interest finding. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The evidence starkly contrasts the children's lives before and after removal. Before removal, they lived under conditions without adequate shelter, electricity, water, food, and education. One child sexually abused the other, while Mother actively sought to prevent its discovery. The children witnessed violent fights and illegal drug use.

Since removal, the conditions for both children have improved. C.R. began to receive six medications she had not been receiving. She now attends school regularly and is catching up academically. She told her foster mother that removal was "the best day of her life" because she was finally safe. She did not inquire about her mother, even

9

on Mother's Day. G.R. now receives his medication, is succeeding in sex-offender treatment at Pegasus, and can now hold full conversations, something he could not do at removal.

Mother's response to the children's removal demonstrates why termination serves their best interests. When G.R. was charged with sexual assault, she defended him, claimed he was forced to confess, and opposed his treatment. Mother completed no services, attended no meetings, and refused all drug tests. Her only communications with the Department were combative and taunting. She had no plan for a home for the children and refused to acknowledge the problems that led to removal. A parent who denies sexual abuse occurred cannot protect a victim from future abuse or help an offender with treatment. The children's need for safety and stability cannot be met by a parent who steadfastly refuses to recognize the dangers they faced.

The evidence presented at trial allowed the finder of fact to have formed a firm belief or conviction that terminating Mother's parental rights was in the best interest of the children and that no less restrictive measures are available. We overrule Mother's fourth issue.

## D. The Trial Court Did Not Abuse Its Discretion in Denying a Continuance

In Mother's third issue, she argues the trial court abused its discretion by failing to grant her oral motion for continuance at trial. We review the trial court's ruling on a motion for continuance for an abuse of discretion. *In re J.A.R.*, 696 S.W.3d 245, 260 (Tex. App.—Houston [14th Dist.] 2024, pet. denied).

Texas Rule of Civil Procedure 251 requires a motion for continuance to be in writing and supported by "affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. Mother provided no such support. Courts presume no abuse of discretion when they deny unsupported motions. *In re J.A.R.*, 696 S.W.3d at 260.

Mother admits that she did not provide support but argues her motion should have been granted due to "extraordinary circumstances" under Texas Family Code § 263.401(b). Per statute, absent extraordinary circumstances for postponement, the trial court was required to begin trial on or before the Monday following the first anniversary of the date the Department was appointed as temporary managing conservator. TEX. FAM. CODE § 263.401(a).

Mother reasons that the statutory deadline for trial should have been extended because she was going to contact her therapist and begin sessions. She also argues, in part, that "she is a living soul created by divine law and governed by natural law; and so therefore she does not operate under statutory presumption." If a parent, by choice, fails to comply with an aspect of the case and then moves for an extension of the statutory dismissal date to comply, the trial court will not abuse its discretion if it denies the parent's extension request. *In re X.M.B.E.*, 706 S.W.3d 714, 722 (Tex. App.—Eastland 2025, no pet.). Circumstances caused by a parent's own actions are not extraordinary. *Id.*

Moreover, the record shows the trial court accommodated Mother twice. At the first setting, Mother failed to appear, claiming fever, so the court allowed her to appear by Zoom. However, she was then disconnected for trying to record the proceedings in violation of court rules.

11

The court reset the hearing to allow in-person appearance. Again, Mother failed to appear, this time claiming transportation problems. Mother apparently knew the Department would provide transportation, but she refused to request it timely. In any event, Mother never arrived for hearing even after telling the trial court she was walking to the courthouse.

The trial court did not abuse its discretion in denying Mother's oral motion for continuance. We overrule Mother's third issue.

## CONCLUSION

Having overruled all of Mother's issues, we affirm the trial court's judgment.

Lawrence M. Doss
Justice